## M. G. KNOWLES v. THE STATE.

### *No. 82. Decided December 17.*

1. **Practice — Continuance — New Trial.** —When the proposed absent testimony is improbable and immaterial, an application for continuance and a motion for new trial based upon such testimony were properly overruled.

2. **Charge of Court — Manslaughter — Insulting Conduct to Female Relative.**—On a trial for murder, where the court instructed the jury that if deceased insulted defendant's wife, and that defendant on hearing of it became so angered and enraged as to render his mind incapable of cool reflection, and while in such condition he immediately, or so soon thereafter as he met deceased, killed him, he would not be guilty of murder, *held*, that the charge was correct.

3. **Charge—Threats Conditional and Uncommunicated.**—Where a so-called threat was conditional on defendant committing an assault upon deceased, and was besides not communicated to defendant until after the homicide, *held*, that the court properly refused to charge upon threats.

4. **Juror Conversing with an Outsider.**—Where there was no separation of the jury, an objection that one of the jurors spoke to an outsider becomes immaterial where it was fully shown that no possible injury resulted to defendant therefrom.

5. **Murder in Second Degree—Evidence.**—See a state of case for evidence held sufficient to sustain a conviction for murder of the second degree.

APPEAL from the District Court of Wilson.    Tried below before Hon. GEORGE McCORMICK.

Appellant was indicted for the murder of one Polonio Vela.    At the trial in the court below he was found guilty of murder of the second degree, and his punishment affixed at a term of twenty years in the penitentiary.

A succinct statement of the facts immediately attendant upon the killing will be found in the opinion of the court.

*Fly & McNeal*, for the appellant.—1. The application for continuance should have been granted.    Even if the diligence was not sufficient, the evidence of the absent witnesses, if material and probably true, entitled defendant to a new trial.    Jackson v. The State, 23 Texas Ct. App., 183;

Covey v. The State, Id., 388; Mayfield v. The State, Id., 645; Schultz v. The State, 20 Texas Ct. App., 315.

2. The court erred in the seventeenth subdivision of its charge to the jury. [*For substance of this charge see subdivision 2 of the syllabus, supra.*] This is not the law. The law demands that the killing take place immediately only when the insult is given in the presence of the slayer; and the jury is not called on by the law to pass on the question of "anger" and "passion;" the law presumes it. Penal Code, art. 597; Eanes v. The State, 10 Texas Ct. App., 421; Niland v. The State, 19 Texas Ct. App., 166; Orman v. The State, 22 Texas Ct. App., 604; Howard v. The State, 23 Texas Ct. App., 265.

3. The court erred in refusing defendant's special requested instructions upon the law of threats, as this was an issue raised by the evidence. Odle v. The State, 13 Texas Ct. App., 612; Rutherford v. The State, 15 Texas Ct. App., 236; Boren v. The State, 23 Texas Ct. App., 28.

*R. L. Henry*, Assistant Attorney-General, for the State.—1. The refusal of the continuance was correct. The proposed evidence was not probably true.

2. The court did not err in refusing to charge on threats. There was no evidence of threats, and the court is not required to charge on issues not raised by the evidence.

3. There is nothing in the point that one of the jurors talked to an outsider during the trial of the case. It is not shown that the accused was injured by the conversation of the juror.

*Fly & McNeal*, also filed a brief and argument on the motion for rehearing, which motion was overruled by the court.

SIMKINS, JUDGE.—1. Appellant complains that the court erred in overruling his motion for a first continuance. The application was based upon the absence of Bruno Morales, Feliciano Alaniz, G. W. Key, and P. B. Plotts. The witness Plotts was present, and testified. Feliciano Alaniz was also brought in during the trial, but not put upon the stand. Bruno Morales was expected to prove that the deceased was a dangerous man, likely to carry out a threat. There is, however, no evidence of any threat made by the deceased. Key was not present. Defendant says he expected to prove by him that Rafael Canton, the eye-witness to the homicide, stated to him that the deceased was advancing on the defendant, and with a butcher knife, at the time of the homicide. It is improbable that the witness Key would have made any such statement; and if he had, it would not have been material, as defendant stated on the stand that when he took his rifle and went to the cow-pen, he intended to kill the deceased any way. We find no error in the ruling.

2. The appellant complains that the court erred in his charge on the insulting conduct to defendant's wife by the deceased. The charge instructed the jury that if deceased insulted defendant's wife, and defendant on hearing it became so angered and enraged as to render his mind incapable of cool reflection, and while in such condition he immediately, or so soon thereafter as he met deceased, killed him, he would not be guilty of murder.

The objection to the charge is, that it required the jury to believe the defendant was acting under the impulse of passion, whereas the question before the jury was whether the insult was given, for if so, the law will presume the passion. The objection is not well taken. To reduce homicide to manslaughter, it must be committed under the immediate influence of passion, and the act must be directly caused by the passion arising out of the provocation (Penal Code, article 594); and when the provocation is insult to a female relative, the killing must take place as soon as the party killing meets the one giving the insult, after he is informed of it. (Id., article 598.) The charge was correct. The only question is whether the charge should have been given under the facts as stated by defendant himself. The deceased and Rafael Canton were employes of defendant. They were in the cow-pen, milking, in the morning. It was wet and freezing cold. Defendant ordered deceased to get the horses and go to work. Deceased refused. Defendant went back into the house, and his wife advised him to get his gun before going to the cow-pen, as the deceased had insulted her a short time before. That on hearing this, and without learning or asking the particulars or character of the insult, he took his gun to the cow-pen, and shot deceased, who was inside the pen. The record discloses no adequate cause for defendant's action.

3. The court did not err in refusing to charge on threats. There were no threats proven. The only approach thereto was, that some one having told deceased that defendant would whip him and drive him off his place before the year was out, witness asked deceased what he would do if defendant attempted to whip him. Deceased answered, "I will stick a knife in him." The so-called threat was conditional on defendant committing an assault upon deceased, and, besides, was not communicated to defendant until after the homicide. Defendant was over six feet high, weighed 180 pounds, was unusually strong; deceased was a low, slender, and small man, weighing 100 pounds.

4. We see nothing in the objection that a juror spoke to an outsider. It was fully shown that no possible injury to defendant's rights resulted therefrom, and there was no separation.

5. The evidence fully sustains the verdict. On the 16th of March, 1892, Polonio Vela, his wife, and one Canton were milking in the cow-pen, some fifty yards from defendant's dwelling house. Defendant came

to the cow-pen, and ordered Vela to get the horses and go to work. Vela answered that it was too cold, and raining, and he would not go. Defendant said, "If you do not go to work I will get my gun and kill you." Vela still refused. Defendant went to the house and got his Winchester, and returning to the pen, asked Vela if he was going to work. The Mexican rose up from where he was milking, and refused. Defendant, standing outside the fence, within seven feet of the Mexican, presented the Winchester at him. His wife caught the gun to save her husband. Defendant jerked it away and struck her on the head, knocking her down, and then turned instantly and shot Vela through the breast, and he fell forward on his face. He died thirty-six hours after. Deceased was entirely unarmed. He had in his hand a milk can. He owned no weapon whatever. The butcher knife was at the house, and was not worn by deceased.

Canton, the other Mexican, being threatened by defendant, left at once, leaving the wounded wife and husband together, and defendant left them and went into his house. Sometime after, the wife bore her husband to their house, near by, laid him on some cotton, and covered him with a quilt and blanket. It was all they had. They were very poor, and had no furniture, no bed. There was no fireplace, and it was freezing. A neighhor, at defendant's request, called at the Mexican's house, and found him sitting on the floor, wrapped in a blanket, his wife squatted down by a little fire under the shed, her head bleeding and gashed from the blow. They had nothing. He returned and told defendant the Mexican was doing badly. Defendant sent him back to insist on the Mexicans leaving the place, and was so importunate that an effort was made to move the dying man. Defendant's house was forty yards off from the house where Vela lay dying. He died about two hours after defendant ordered his removal. The defendant, the day after the shooting, asked a doctor to visit the wounded man, stating he shot him accidentally; but the doctor did not attend, nor did defendant or his wife send food, medicine, or clothing to the wounded man. Defendant explained this by saying he was so incensed over the insult he would do nothing. The evidence renders it improbable that there was any truth in this plea. Defendant fled after the death of his victim, and was captured in a distant county.

We think the verdict was extremely moderate, and it is affirmed.

*Affirmed.*

Judges all present and concurring.