FELIX CHATMAN v. THE STATE.

No. 1772. Decided March 1, 1899.

1. **Assault With Intent to Murder—Charge as to Aggravated Assault.**

Upon a trial for assault with intent to murder, a charge of court as to aggravated assault is erroneous, and imposes upon defendant a burden not authorized by law, which requires the jury not only to believe that adequate cause existed to reduce the offense to manslaughter, had death resulted, and that passion was engendered, which rendered defendant's mind incapable of cool reflection, but also that defendant did not have, at the time, the specific intent to take the life of the prosecutor. The effect of such charge was to deprive defendant altogether of the defense of aggravated assault.

2.  Same—Where Another Party Was Acting in Concert With Injured
    Party.

On a trial for assault with intent to murder, where the evidence showed that, during the rencounter, a friend of the alleged injured party ran up in a hostile manner with a knife, it was error for the cuurt to fail or refuse to give instructions to the jury both as to manslaughter and self-defense predicated upon the acts and conduct of said third party in connection with those of the alleged injured party. If defendant was the aggressor and struck the first blow with intent only to have a fist fight, and the hostile manner of this third party aroused his passion to such an extent as that he was incapable of cool reflection and he then formed the intent to kill, death not ensuing, his offense could be of no higher grade than manslaughter. And if defendant was not the aggressor, although he used apparently more force than was necessary as against the one party, yet as against the combined assault of both he might only have been guilty of aggravated assault, and the court should have explicitly instructed the jury in this regard.

3.  Same—Aggravated Assault—Adequate Cause.

On a trial for assault with intent to murder, where it appeared that defendant, being in his own place of business, was struck by a rock which came apparently from the wagonyard of the prosecutor, to which defendant immediately went and politely inquired of prosecutor who it was that had thrown it; and during the colloquy prosecutor ordered him off, called him a liar, advanced upon and struck him; Held, this in itself might be adequate cause sufficient to reduce to aggravated assault an offense which would otherwise have been an assault with intent to murder; and this phase of the case should have been presented in an appropriate charge.

APPEAL from the District Court of Falls. Tried below before Hon. S. R. SCOTT.

Appeal from a conviction for assault with intent to murder; penalty, seven years imprisonment in the penitentiary.

The opinion states the case fully.

*Z. I. Harland,* for appellant.—Upon the trial it was not denied but that defendant and said Kemper did have a personal difficulty in the town of Marlin on February 20, 1898, during the progress of which defendant struck said Kemper over the head with a stick of stove wood. but the contest on the trial was over the issues as to whether or not said blow was struck by defendant in self-defense, and if it was not, of what grade of assault was defendant guilty.

The evidence upon the trial showing that Capers was present and acted with Kemper, advanced to where Kemper and defendant were fighting with an open knife in his hand and was still advancing when defendant struck Kemper, it was error in the court to ignore his participancy in said difficulty and to limit defendant's right of self-defense to the hostile acts and demonstrations of Kemper alone, but the court in its charge should have recognized and submitted to the jury such right with reference to the acts of Capers also. Jones v. State, 20 Texas Crim. App., 665; McLaughlin v. State, 10 Texas Crim. App., 340; Cartwright v. State, 16 Texas Crim. App., 473; Bean v. State, 25 Texas Crim. App., 346; Meuley v. State, 26 Texas Crim. App., 274; Carter v. State, 35 S. W. Rep., 378.

Defendant and Kemper being engaged in a fist fight when Capers appeared with his knife, if defendant believed that Capers intended to

take part against him in the fight, and this belief so terrorized him as to render his mind incapable of cool reflection, and under such state of mind he struck Kemper with the stick of wood, and the jury should have believed that he was not justified on the ground of self-defense, under appropriate instructions his offense would have been manslaughter had death resulted, and aggravated assault and battery at most, death not resulting, and the court should have so charged the jury. Carter v. State, 35 S. W. Rep., 378; Lawrence v. State, 10 Texas Crim. App., 495; Ellison v. State, 12 Texas Crim. App., 557; Williams v. State, 15 Texas Crim. App., 617.

If at the time defendant assaulted Kemper he had no intent to kill him, death not resulting from the assault, then he would be guilty of no higher grade of offense than aggravated assault and battery; and again, if he assaulted him with the specific intent to kill him, but at the time of the assault he was by some adequate cause moved to such a degree of anger, rage, sudden resentment, or terror as to render his mind for the time incapable of cool reflection, and in such a state of mind committed such assault, and it was not in self-defense, death not having resulted, his offense was of no higher grade of assault than aggravated assault and battery, and it was prejudicial error for the court to so frame its charge as to require the absence of an intent to kill to combine with the state of mind above mentioned before the jury could convict of aggravated assault and battery. Carter v. State, 28 Texas Crim. App., 359; Stevens v. State, 43 S. W. Rep., 1005; Ponton v. State, 35 Texas Crim. Rep., 598; Spivey v. State, 30 Texas Crim. App., 344.

If in defending himself against an unlawful attack upon him by Kemper defendant became excited by passion to such an extent as to render his mind incapable of cool reflection, and under this state of excitement he carried his right of self-defense too far, or used more force than was necessary to his protection in striking Kemper the blow with the stick of wood, his offense would have been aggravated assault and battery, and the court erred in refusing to so charge the jury, and in charging the jury that if he used more force than was necessary to repel Kemper's assault he could not avail himself of the law of self-defense. Hobbs v. State, 16 Texas Crim. App., 523; Howard v. State, 23 Texas Crim. App., 280; West v. State, 2 Texas Crim. App., 476.

Conceding for the purpose of this proposition that defendant went over into Kemper's wagon yard and provoked a difficulty with him, then the evidence showing conclusively that he did not do so with any intention of killing Kemper or of inflicting serious bodily injury upon him, and that after having provoked the difficulty he suddenly and without deliberation struck him the blow for which he is now prosecuted, he was guilty of no offense greater than aggravated assault and battery, and the county attorney having argued the issue of "provoked difficulty" to the jury it was prejudicial error for the court to refuse defendant's special charge embodying the legal proposition above asserted. Roach v. State, 21 Texas Crim. App., 249; Arto v. State, 19 Texas Crim.

App., 126; Meuley v. State, 26 Texas Crim. App., 274; White v. State, 23 Texas Crim. App., 155; Jones v. State, 17 Texas Crim. App., 602; King v. State, 13 Texas Crim. App., 277; Green v. State, 12 Texas Crim. App., 445; Hodges v. State, 3 Texas Crim. App., 470; Spivey v. State, 30 Texas Crim. App., 343.

The court erred in refusing to grant defendant a new trial, because the punishment assessed by the verdict of the jury was and is excessive and unwarranted by the facts in evidence, and shows upon its face that it was and is founded upon race prejudices instead of upon the proof upon the trial and the enormity of defendant's crime.

*Robt. A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at confinement in the penitentiary for a term of seven years, and he appeals.

Four witnesses testified for the State in regard to the difficulty, and the defendant testified on his own behalf. As the testimony of all the State's witnesses is substantially the same, we will quote the testimony of the prosecutor, T. J. Kemper, as presenting the State's case, and that of the defendant as presenting the defendant's case. T. J. Kemper testified for the State: "I live in Marlin, Texas, and know the defendant. On Sunday afternoon, February 20, 1898, I was in my wagon yard in Marlin, Texas, in company with Mr. C. G. Capers, Mr. Gene Towers, Belo Forrest, and Len Morris, when defendant and Jim Henry came into the yard, and defendant said that some one had thrown a rock from over in my yard and struck him in an adjoining lot, and inquired who threw the rock. Belo Forrest spoke up, and said no one had thrown a rock from over there. Defendant said that they had, and that the rock struck him. I then spoke up, and told defendant that no one had thrown a rock from over my way. Defendant then replied to me, 'It's a damned lie.' I said, 'You are another,' and defendant thereupon struck me with his fist. I struck back, and several licks then passed between us. I was getting the better of the fight, and struck defendant one good hard lick in the face, and staggered him some, when defendant ran back towards a pile of stove wood which was lying in the wagon yard, and Jim Henry came meeting him, and handed him a large stick of stove wood, with the remark, 'Give him hell.' Defendant ran up to me and struck me with this stick of wood on the head, knocking me down. I was unconscious from the blow struck me by the defendant with the stick of wood, until the Sunday following, during which time the physicians had performed the surgical operation upon me testified about by Dr. Torbett. I was confined to my bed for a period of about six weeks from the effects of this blow by defendant. The stick of wood with which defendant struck me was of sound postoak, about eighteen inches or two feet long, about four inches in thickness, and would weigh about four or five pounds. I think the stick of wood shown me

is the same defendant struck me with. If not, it is of about the same size, material, and weight."

The State proved venue by this witness, and time, as laid in the indictment.

Cross-examined: "At the time defendant first came over into the yard I was whittling, and had my knife open in my hand. When he came in, he stopped about forty-five or fifty feet away from where myself and the gentlemen mentioned in my direct examination were standing, and continued to stand there during the conversation which ensued about the throwing of the rock. I engaged in the conversation about the throwing of the rock and walked towards defendant, speaking to him pleasantly, and telling him no rock had been thrown from over that direction. I shut my knife up and put it in my pocket when I started towards him, and went the forty-five or fifty feet between us, to him, when he called me a liar, and I called him another, and he struck me. He struck me the first blow. It is a fact that I did come the forty-five or fifty feet from where I was standing to him, and that he did not advance a step towards me. The last blow which I struck him, before he got the stick of wood and struck me with it, nearly knocked him down. When we first began to pass blows we were about thirty feet from the pile of stove wood, but I pressed the fight, and defendant went backwards toward the wood pile. If defendant had any other weapon or instrument of offense or defense about him, I never saw it, and he did not attempt to use it. There had never been any previous trouble, quarrel, or difficulty between defendant and myself. This was the first trouble of any character we had ever had, and the relations between us up to this time had been friendly."

Felix Chatman, defendant, testified: "On the Sunday afternoon of the difficulty between Mr. T. J. Kemper and myself I had been sitting in the rear of a restaurant on the adjoining lot to Mr. Kemper's wagon yard, playing a game of dominoes. During the game I got up to go into the restaurant to get me a glass of water, when some one threw a rock from over in the direction of the Kemper wagon yard, and struck me with it, inflicting pain upon me. I went through the restaurant, and over into Mr. Kemper's wagon yard, and there saw him, Mr. Capers, Mr. Towers, Mr. Belo Forrest, and Mr. Len Morris, all talking together. I walked up to within about thirty feet of them, and asked who it was that threw that rock over there and hit me with it. Belo Forrest spoke up, and said that no rock had been thrown from over there. I remarked that it came from the direction of the wagon yard, and when I did this Mr. Kemper got up and started towards me, and said that I was a liar; that no rock had been thrown over there. I told him he was another, and by that time he had gotten to me, and when he got to me he struck me in the face with his fist. The blow caused me pain. It was a pretty hard blow. Mr. Kemper was striking me with his hands, and I thought he had something in one, striking me with it. I was retreating, and warding off his blows as best I could, when finally Mr. Kemper struck

me on the nose, the blow causing the blood to flow from my nose and face, whereupon I immediately ran about ten steps to a pile of stove-wood lying in the yard, got a stick of wood, and struck Mr. Kemper with it. Just before I started to get the stick of wood, I saw Mr. Capers, whom I knew was Mr. Kemper's uncle, run up, and some one said, 'Look out for a knife,' and I looked, and saw an open knife in Mr. Capers' hand. Then I got the stick of wood, and struck Mr. Kemper with it, and ran off out of the yard. I had no intention of getting into a difficulty when I went over into the wagon yard on that afternoon. I was unarmed at the time. When I went over there I stopped about thirty or forty feet from these white men, and, when Mr. Kemper got up and started towards me, I did not advance on him any,—just stood still until he got to me and struck me. Mr. Kemper called me a liar first and struck me first. When Mr. Kemper started towards me, Mr. Capers also started towards me, right behind Mr. Kemper. Mr. Capers had his open knife in his hand. Mr. Kemper was whittling when I first went into the yard, and had his knife open in his hand. When he started towards me he shut it up, and he had the closed knife in his hand when he was striking me, striking me with it."

Cross-examined: "When I first went over into the yard I asked Belo Forrest who threw the rock and hit me. He said no one had thrown a rock from over in that yard. I said a rock had been thrown from over in that direction, and had struck me. Mr. Kemper then jumped up and said it was a lie, that no rock had been thrown from over there, and started towards me, and when he got to me he struck me. He struck me the first blow. He hit me three licks. I only struck him once with the stick of wood. When Mr. Kemper started towards me, Mr. Capers came on behind with his knife in his hand, advancing upon me. I then got the stick of wood, and hit Mr. Kemper with it, he having just struck me in the face, and made my face and nose bleed, and nearly knocked me down. After the difficulty, I went down to Mr. Renfro's drug store, and had Dr. Ward dress my wounds on my face. The skin was broken on my face where Mr. Kemper struck me, and Dr. Ward put some plaster on it."

The court charged on assault with intent to murder, aggravated assault, and self-defense. As appellant assigns as error the court's charge on aggravated assault, we copy the same, as follows: "If you believe from the evidence that the defendant, in the county of Falls, State of Texas, on or about the time charged in the indictment, with a deadly weapon, did unlawfully assault the said T. J. Kemper as charged, or did inflict serious bodily injury upon T. J. Kemper, but at the time of making such assault the defendant possessed no specific intent to kill, but was, by some adequate cause (as hereinafter explained) moved to such a degree of anger, rage, sudden resentment, or terror as to render him for the time incapable of cool reflection, and in such a state of mind he committed said assault, and that such assault was not in defense of himself against an unlawful attack, producing a reasonable expectation

or fear of death or serious bodily injury, then you will find the defendant guilty of an aggravated assault, and assess his punishment at a fine of not less than twenty-five nor more than one thousand dollars, or by imprisonment in the county jail not less than one month nor more than two years, or by both such fine and imprisonment, as you may determine and state in your verdict." This charge was excepted to. Appellant contends that the charge imposed on him a burden not authorized by law; that is, that it required the jury not only to believe "that adequate cause existed to reduce the offense to manslaughter had death resulted, and that passion was engendered which rendered the mind of appellant incapable of cool reflection, but also that appellant did not have at the time the specific intent to take the life of Kemper." In this contention appellant is correct. While it is true that there can be no assault with intent to murder unless the party making such assault entertains at the time the specific intent to kill, yet it by no means follows that every assault committed by a party where he entertains the specific intent to kill is an assault with intent to murder. This intent, as we understand it, must exist, and the assault must be of such a character that if death results it would be murder of either the first or second degree. If death result and it would not be murder of the first or second degree, then, although the specific intent to kill is entertained, it would not be an assault with intent to commit murder. Of course, an assault upon implied malice, if the other elements of the offense are present, would be an assault with intent to murder; that is, if the intent to kill is formed in a mind disturbed or excited by passion, yet there is no adequate cause to reduce to manslaughter, and an assault is made with the specific intent to kill, under such circumstances it would be an assault upon implied malice, and so an assault with intent to murder. But if adequate cause is present to excite passion, and passion is excited by such adequate cause, and the intent to kill is formed in such a state of mind, in case death results from the assault the offense would only be manslaughter; hence, if death does not ensue, such assault would be only an aggravated assault. See Childs v. State, 35 Texas Crim. Rep., 573; Carter v. State, 28 Texas Crim. App., 359; Stevens v. State, 38 Texas Crim. Rep., 550; Ponton v. State, 35 Texas Crim. Rep., 598. The foregoing was the only charge given by the court on the subject of aggravated assault, and it was clearly erroneous, and put a burden on appellant not authorized by law. The effect of it really was to deprive him of the defense of aggravated assault altogether; and certainly the testimony very cogently presented the issue of aggravated assault in this case.

Appellant also complains of the action of the court in refusing to instruct the jury on the subject of aggravated assault predicated on the acts and conduct of Capers, in connection with those of Kemper. It occurs to us that the court should have given to the jury the proper instruction on this phase of the case, both relating to manslaughter and also self-defense; especially when the court instructed the jury,

that, if appellant used more force in his defense against the assault
by Kemper than was necessary, he could not rely on self-defense. If ap-
pellant was the aggressor and struck Kemper the first blow, having no
further intent than to enter into a fist fight with him, and he was
pressed by Kemper; and if, in addition to this, Capers ran up in a hos-
tile manner with a knife, then, if the mind of appellant, on account of
this dual attack on him, became excited or aroused by passion to such
an extent that he was incapable of cool reflection, and he then formed
the intent to kill,—it would not have been an assault with intent to
murder, but only an aggravated assault. Again, if appellant did not
make the first assault on Kemper, but Kemper made the first assault
on him with his hands and fist, the jury might believe that, although
during the progress of the fight he was pressed by Kemper, who struck
him a blow or blows which almost knocked him down, yet he did not
have the right to resort to the use of the stick in order to repel such as-
sault, and the resort to such a weapon was the use of more force than
was reasonably necessary in his protection; whereas, if their minds had
been directed to the combined assault on him by both Kemper and Ca-
pers, as suggested by appellant's own testimony, then the jury may have
believed that he did not resort to more force than was reasonably neces-
sary for his own protection; or they might believe, under such circum-
stances, that, although appellant used more force than was reasonably
necessary, he was only guilty of an aggravated assault; and, in our
opinion, the court should have explicitly instructed the jury in this
regard.

There is another phase of the case, it occurs to us, which should have
been presented to the jury. There is no controversy that appellant,
while at his own place of business, was struck by a rock, thrown by some
one, which came from the direction of Kemper's wagon yard, where
Kemper and his friends were at the time. Appellant and Henry imme-
diately went to the wagon yard, and, for aught that appears, politely
inquired who had thrown the rock which struck appellant. According
to appellant's testimony, during the colloquy Kemper called him a liar,
advanced upon him, and struck him the first blow. According to Kem-
per's testimony, the lie was passed between them with reference to the
throwing of the rock, and he says that appellant struck him first. Now,
if appellant, smarting under the blow from the rock which had been
thrown into his place of business, reasonably believed that it was thrown
by some of the party in the wagon yard, and, on his inquiry as to who
threw the rock, appellant called him a liar, then it occurs that this
itself might be adequate cause to reduce the offense to an aggravated
assault. We are aware of our statute on the subject which requires the
provocation must be by the party assaulted, and not by some other per-
son; yet, in construing our statutes on manslaughter, it has been held
that there are other adequate causes outside of those outlined in the
statute itself. It may be that neither prosecutor nor any of his party

were guilty of throwing the rock into appellant's place of business; but, evidently, appellant believed that some one of the party had thrown the rock; and we are to judge of this question from defendant's standpoint. If the rock had been thrown from the wagon yard or from that direction, and appellant reasonably believed that some one of the party in the wagon yard had thrown the rock, and he immediately went to see about it, and was denounced as a liar, and as stated by him, told abruptly to get out of the yard, then we are inclined to the view that this might constitute adequate cause; and this phase of the case should have been presented in an appropriate charge. A number of other errors are assigned with reference to the charge given by the court, but we do not deem it necessary to discuss the charge further. The charge was evidently not a fair and impartial charge, such as the law requires in cases of this character; and because of the errors in failing to properly present the issues arising from the evidence, the judgment of the lower court is reversed, and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge, absent.