HIRAM ROGERS v. THE STATE.

No. 1839. Decided June 28, 1912.

**1.—Murder—Charge of Court—Manslaughter—Adequate Cause.**

Where upon trial of murder, the evidence showed that the deceased visited the wife of the defendant and had improper relations with her, and that the defendant on several occasions asked the deceased to cease his attentions to defendant's wife, and on the day of the homicide again urged him not to do so, whereupon deceased told the defendant that he would continue such improper conduct regardless of defendant's objections, and that he would marry defendant's wife as soon as she got a divorce, etc., whereupon the defendant shot him, the court should have submitted this phase of the case in his charge on manslaughter.

**2.—Same—Rule Stated—Insulting Conduct Towards Female Relative.**

Insulting words or conduct towards a female relative, embrace not only such circumstances as really insult the woman, but even if the acts are agreeable to her, yet the conduct is such as to be an insult to her husband, they are within the statute. Following Garrett v. The State, 36 Texas Crim. Rep., 233. and other cases.

**3.—Same—Adequate Cause—State of Mind.**

Even though the adequate cause did exist, if the mind was not rendered incapable of cool reflection by anger, rage or resentment it would not reduce the offense to manslaughter.

**4.—Same—Adequate Cause by Statute—Charge of Court.**

If a cause is made adequate by statute and is in evidence, the charge must not only tell the jury that the same is adequate cause but must apply the law to the facts. Following Ware v. State, 49 Texas Crim. Rep., 416, and other cases.

**5.—Same—Practice.**

After the court has so instructed the jury, then it is proper to leave it to the jury to determine whether such cause produced anger or resentment to the extent to render the mind incapable of cool reflection. Following Chapman v. State, 40 Texas Crim. Rep., 272, and other cases.

**6.—Same—Cool Reflection.**

If one's mind is capable of cool reflection, even though statutory adequate cause is proved, yet the offense would be murder. Following Jones v. State, 47 Texas Crim. Rep., 515, and other cases.

**7.—Same—First Meeting—Additional Insults.**

Where there has been a meeting after the first provocation, and the defendant learned of additional insults, and the killing occurs at the first

meeting after the last provocation the charge should apply the law to the fresh provocation, authorizing the jury to look to the preceding facts and circumstances only in passing on the condition of defendant's mind. Following Venters v. State, 47 Texas Crim. Rep., 281, and other cases.

**8.—Same—Evidence—Threat.**

Before a threat made by the defendant can be admitted in evidence, it must be shown that the same related to the person slain.

**9.—Same—Charge of Court—Murder in Second Degree—Self-Defense.**

Where, upon trial of murder, the objections to the court's charge defining and applying the law of murder in the second degree and self-defense were not well founded, there was no error.

Appeal from the District Court of Red River. Tried below before the Hon. Ben. H. Denton.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Kennedy, Watson & Robbins,* for appellant.—On question of threats by defendants: Gaines v. State, 38 Texas Crim. Rep., 230; Strange v. State, id., 280; Holley v. State, 39 id., 301; Hall v. State, 43 id., 257; McMahon v. State, 46 id., 540; Helvenston v. State, 53 id., 636; Fuller v. State, 54 id., 454.

On question of provocation and adequate cause: Eanes v. State, 10 Texas Crim. App., 423; Jones v. State, 33 Texas Crim. Rep., 493; Johnson v. State, 46 id., 291; Williams v. State, 24 Texas Crim. App., 637; Richardson v. State, 28 id., 216; Whaley v. State, 9 id., 306; Tucker v. State, 50 S. W. Rep., 711; Martin v. State, 51 S. W. Rep., 913; Bays v. State, 50 Texas Crim. Rep., 548, 99 S. W. Rep., 561; Stewart v. State, 52 Texas Crim. Rep., 273, 106 S. W. Rep., 689; McHenry v. State, 114 S. W. Rep., 115; Gillespie v. State, 53 Texas Crim. Rep., 168, 109 S. W. Rep., 158.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted for murder and convicted of murder in the second degree, his punishment being assessed at ten years confinement in the penitentiary.

It appears that deceased and Miss Helan McMillan, who afterwards became the wife of appellant, had known each other from childhood, residing in Delta County. It would further appear that they at one time were engaged to be married. Deceased left Delta County and went to Oklahoma. Miss McMillan's father moved to Red River County, and there she met appellant. About a month after the marriage of appellant and Miss McMillan a letter was received by her from deceased, when appellant and his wife wrote deceased of their marriage and returned to him his engagement ring. After eighteen months of wedded life appellant and his wife separated in August,

1909, and she returned to her father's home. In February, after the separation, deceased came from Oklahoma to Fulbright, where the father of Mrs. Rogers resided, and began visiting at the home of Mr. McMillan, and was frequently seen with Mrs. Rogers, wife of appellant.

Appellant says he loved his wife and tried to get her to return to him frequently before and after Ed Murphy, deceased, came to Fulbright, and had others to intercede for him, but she would not do so, and he attributed her refusal to deceased's attentions to her. He says she admitted receiving letters from deceased prior to the separation, and admitted to him that this was the cause of the separation —that she loved Murphy, and did not love him. Appellant states he saw Murphy several times and requested him to quit going to see his wife, stating if he would do so he believed she could be induced to return to him, and that Murphy promised him to desist, but never did do so. That the day of the killing, learning that deceased had been with his wife all the day before at her home (her father and mother being absent) he determined to go and see him about the matter. Before going he borrowed a pistol from George Bartlett, and after getting the pistol told Bartlett he had just heard something and was going over to Baker's and if something did not go right he was going to have trouble. Deceased was working for Baker. The whole cause of the trouble is shown beyond doubt to be the attentions deceased was paying the wife of appellant. There is no suggestion of any other difference existing between them, and appellant claims that at all times prior to the homicide when he approached deceased about the matter he would promise to quit, but that when he learned on Monday morning that they had been together all day Sunday, he went to see him about it, and in his statement made to the grand jury the day after the shooting he testified: "I went over there (Baker's) to talk to him. I asked him if he was going to quit going with my wife and he said no, he didn't think it was wrong to go with her that we were separated. I told him that it was wrong and I wanted him to stop it. He said he thought it was all right for him to go with her as long as she and her father didn't object, and I told him again I wanted him to stop and I asked him if he was not over there at her father's Sunday to see her and he said, yes, and I told him again I wanted him to quit and he said, 'By God, he was not going to quit,' and I told him if he didn't quit going with her or to see her, it would start a big talk and it might cause trouble. At this time we were up at a pecan tree in the field where he had some drinking water and I asked him if he and she had talked about marrying and he said yes, that he would marry her when she got a divorce, that he loved her well enough to marry her. I then told him I thought it was wrong and he said he didn't think it was, he said he was going with her and it didn't make any difference with him if I did object, and he kind of stepped back a little and started

to put his right hand in either his side pocket or hip pocket and I shot him in the left breast, then I think he started to run and the second shot I don't remember whether I shot him in the left breast again or in his side or back; the third shot he was running from me and I run a step or two after him and shot him in the back of his head and he fell then, fell over on his face. I saw no weapon of any kind about him at all." Appellant at the time of trial made a more favorable statement for himself, and stated if deceased had agreed not to go with his wife, while she was his wife, there would have been no trouble. This statement was introduced by the State, and this Sunday visit of deceased would be a fresh provocation if deceased had theretofore been promising appellant to cease his visits. It is shown by all the witnesses, that when appellant approached deceased at Baker's, that they walked together from where deceased was plowing to a pecan tree where a water jug was kept, and stood there and talked a few moments before the shooting occurred. No one heard the conversation except appellant and deceased.

Complaint of the charge on manslaughter is made in that it did not properly define adequate cause. The court instructed the jury: "By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection." Under our decisions it has been held that the words "insulting words or conduct towards a female relative," embraces not only such circumstances as really insult the woman, but if the acts were agreeable to her, yet the conduct is such as to be an insult to her husband, they are within the statute. (Garrett v. State, 36 Texas Crim. Rep., 233; Canister v. State, 46 Texas Crim. Rep., 221; Young v. State, 69 S. W. Rep., 153.) In the case of Wright v. State, 52 Texas Crim. Rep., 543, one in which the wife was separated from the husband, it was held if the conduct of the assaulted party towards the wife was such as to be an insult to her husband, even though no insult to the wife, such conduct would be "adequate cause" and if in fact it did produce such anger or passion as to render the mind incapable of cool reflection, it would reduce an offense to the grade of manslaughter. Of course, the conduct would not of itself reduce the offense to manslaughter, but would only constitute what is termed in law adequate cause, and if this cause did in fact produce such anger, rage, or resentment as to render the mind incapable of cool reflection, it would reduce the offense; but even though the adequate cause did exist, if the mind was not rendered incapable of cool reflection by anger, rage or resentment it would not reduce the offense. The court should have defined adequate cause as applicable to the evidence adduced on the trial. Our decisions all hold that if a cause made adequate by statute is in evidence, the charge must not only tell the jury that same is adequate cause, but must apply the law to the facts. Low v. State, 20 S. W. Rep., 366; Attaway v. State, 41 Texas Crim. Rep., 399; Ware

v. State, 49 Texas Crim. Rep., 416; Horn v. State, 50 Texas Crim. Rep., 409; Gillespie v. State, 53 Texas Crim. Rep., 167; Brown v. State, 54 Texas Crim. Rep., 126; Branch's Crim. Law, section 511. After the court has so instructed the jury, then it is proper to leave it to the jury to determine whether such cause produced anger or resentment to the extent to render the mind incapable of cool reflection. Chatman v. State, 40 Texas Crim. Rep., 272; Warthan v. State, 41 Texas Crim. Rep., 389; Holcomb v. State, 54 Texas Crim. Rep., 489; Knowles v. State, 31 Texas Crim. Rep., 385; Fendrick v. State, 39 Texas Crim. Rep., 147. If one's mind is capable of cool reflection, even though statutory adequate cause is proven, yet the offense would be murder. (Jones v. State, 47 Texas Crim. Rep., 515; Jones v. State, 33 Texas Crim. Rep., 492; Gillespie v. State, 53 Texas Crim. Rep., 168.) However, in this case, it being shown that appellant had met deceased several times after learning that he was visiting his wife, such visits prior to the Sunday before the killing would not constitute adequate cause to reduce the offense, and could only be considered by the jury in passing on whether or not the acts on Sunday preceding the killing did in fact render the mind incapable of cool reflection, it having been held by this court that where there has been a meeting after the first provocation, and a defendant learns of additional insults, and the killing occurs at the first meeting after the last provocation, the charge should apply the law to the fresh provocation, authorizing the jury to look to the preceding facts and circumstances only in passing on the condition of defendant's mind. (Venters v. State, 47 Texas Crim. Rep., 281; Richardson v. State, 28 Texas Crim. App., 221, and cases cited.)

There is another question raised in which the court erred. It is the rule in this State to admit a threat made by a defendant in evidence; it must be shown that the threat related to the person slain. Inasmuch as Mrs. McMillan and her husband both testify that appellant did not call deceased's name at the time the threat was made, and nothing was said at the time to show that he was alluding to or had reference to deceased, she should not have been permitted to testify to the threat. (Fuller v. State, 54 Texas Crim. Rep., 455, and cases there cited.)

We do not think the grounds complaining of those paragraphs of the charge defining and applying the law to murder in the second degree and self-defense are well founded. These paragraphs are not subject to the criticisms made. The evidence in this case rendering it a very close question as to whether defendant is guilty of murder or manslaughter (if not justified), the failure of the court to properly define and apply the law of manslaughter to the evidence is such error as necessitates a reversal of the case, and we do not deem it necessary to discuss the other questions raised in the motion.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*