### W. S. NILES V. THE STATE.

No. 9186.    Delivered May 26, 1926.

#### 1.—Murder—Evidence—Cross-Examination of Wife—Held, Proper.

Where, on a trial for murder, appellant defends on the ground that the killing was due to the deceased having forcibly raped his wife, and the wife being introduced by him as a witness, and having testified that deceased had forcibly raped her, there was no error in permitting the state on cross-examination to go into the details of her illicit relations with deceased such cross-examination being germane, and being in rebuttal of her testimony on her direct examination. Following Ward v. State, 139 S. W. 272. See also Branch's Ann. P. C., Sec. 152.

#### 2.—Same—Continued.

The state is not, however, entitled on cross-examination of the wife of the defendant, to go into new matter, and thereby make the wife of the defendant a witness for the state against her husband, and the court erred in the instant case in permitting the state on cross-examination of the wife to bring out conversations between herself and her husband, and to detail her relations with the wife of the deceased. Art. 714, C. C. P., 1925. Branch's Ann. P. C., Sec. 152, p. 187. Following Willingham v. State, 252 S. W. 530.

#### 3.—Same—Comments of Court—On Testimony of Witness—Improper.

Where the court, in ruling on the admissibility of the testimony of the wife of the appellant on her cross-examination, stated in the hearing of the jury that her testimony was admitted for the purpose of showing the relations between the parties, meaning deceased and appellant's wife. This comment of the court was improper. Trial courts should be exceedingly cautious in refraining from any comments on the testimony as offered, for juries are prone to observe and scrutinize and to be unduly influenced by what the court may think about the testimony admitted.

#### 4.—Same—Charge of Court—On Adequate Cause—Improper.

Where appellant's defensive theory on a trial for murder was insulting acts and conduct of the deceased toward the wife of appellant, it was error

for the court to limit the provocation, in submitting the law of adequate cause, to the time of the commission of the affray, the charge should have told the jury that as a matter of law the insulting words and conduct of the deceased toward a female relative would constitute adequate cause, and should not have limited the provocation to the time of the offense. Following Squyres v. State, 242 S. W. 1024; Dixon v. State, 271 S. W. 897, and Bayes v. State, 99 S. W. 561.

### 5.—Same—Continued.

Where the evidence showed that appellant's wife had told him that deceased had kissed her and made love to her, and that thereafter appellant had met and talked with deceased, but that subsequently the wife had told appellant that deceased had forcibly ravished her and had carnal intercourse with her, and that the killing occurred on the first meeting between appellant and deceased thereafter, it was error for the trial court to charge the jury only that to reduce the killing to manslaughter, the killing must occur on the first meeting.

### 6.—Same—Continued.

The evidence disclosing that there were two different insults and acts of deceased occurring at different times, the court should have so framed his charge as to apply the law of manslaughter to the last provocation, as well as to the first, for the reason that the jury may have been misled by the charge into believing that the first provocation not having caused the killing on the first meeting, the appellant was not entitled to have the second provocation considered by them. See Rogers v. State, 67 Tex. Crim. Rep. 467.

### 7.—Same—Impeaching Witness—General Reputation—Held Admissible.

Where the wife of appellant had been vigorously assailed by counsel for the state on her cross-examination, and testimony of state witnesses had impeached her testimony, the appellant should have been permitted to prove that her general reputation for truth and veracity was good, and for the errors pointed out, the judgment is reversed and the cause remanded.

Appeal from the District Court of Hill County. Tried below before the Hon. Horton B. Porter, Judge.

Appeal from a conviction of murder, penalty nine years in the penitentiary.

The opinion states the case.

*Collins, Dupree & Crenshaw,* and *Frazier & Avirette* of Hillsboro, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted in the District Court of Hill County for the offense of murder, and his punishment assessed at nine years in the penitentiary.

The record discloses that the appellant shot and killed the deceased, Ben Freeman, in the town of Hillsboro, about the 20th day of April, 1924. It was the contention of the state that the appellant was guilty of murder. The appellant defended on alleged insults offered by the deceased to his wife and upon self-defense. The appellant's wife testified that a short time prior to the alleged homicide that she told him, the appellant, of the deceased having attempted to make love to her, and having kissed her, and that thereafter she informed the appellant of the deceased having threatened, choked and forced her, and, against her consent, had carnal knowledge of her; that within a few days after imparting this information to the appellant, he killed the deceased as above stated. The record discloses that the appellant saw and talked with the deceased after his wife had told him of the deceased having kissed her and having attempted to make love to her, but that he had not seen or talked to him during the time intervening between the time that his wife informed him of the deceased having raped her and the morning of the killing. This is a sufficient statement of the facts as a basis for this opinion.

The appellant complains of the action of the court in permitting the state, on cross-examination, to interrogate his wife to the effect that after the improper conduct on the part of the deceased and after the date of the intercourse by force, if she did not smoke cigarettes with the deceased, and signal to him that her husband was mad, and if she did not tell the deceased good-by and ask him what he wanted for his dinner, and one night when the deceased got in bed with her, if her baby called the deceased "papa" and asked what he was doing there; all of which was denied by her. She was further interrogated by the state and asked if she had not seen the deceased, since said improper conduct, at San Antonio and talked to him, to which she replied that she had, and other similar questions along this line were asked her. She was asked if she were not looking for the deceased to come from Hillsboro to Waco, and if she did not invite the deceased to do so, to which she answered that she had not invited him but was expecting him, and similar questions which, appellant urges, were not in response to any questions brought out by him in chief. The bills of exception covering these questions show that these identical matters were not brought out by the appellant on direct examination, but we are of the opinion that same were germane to the issues made and brought out by appellant on direct examination of

the witness, and the court committed no error in permitting the state to go into the questions complained of on the issues presented, for the reason that appellant was contending that the improper conduct and relations of the deceased towards and with his wife, which she had imparted to him, was the cause of the homicide in question, and had introduced his wife as a witness and had elicited from her testimony to that effect. Ward v. State, 159 S. W. 272. For collation of authorities see Branch's Ann. P. C., Sec. 152.

Appellant also complains in several bills of exception to the action of the court in permitting the state, on cross-examination, to interrogate his wife to the effect that if she, on the morning after the alleged improper conduct and after the deceased's wife had left the premises where both families were then living, the appellant did not raise some question and ask her, appellant's wife, if she, deceased's wife, had gone home, to which appellant's wife replied that she had gone because she was mad at the deceased. The appellant also complains of the state asking his wife and having her testify that after she had seen the deceased in Hillsboro, if she did not call appellant up on the telephone at Waco and tell him everything was all right, to which she answered that the conversation was relative to other matters, and she was repeating what her husband said to her. Complaint is also made to the action of the state in asking her if she and her husband had not planned to get the deceased to Waco and kill him, which she' denied, and in asking her if the appellant had not told her that he invited the deceased and his wife to come to Waco, and if the appellant had not purchased and turned over to her a pistol after she had told him of said improper conduct of the deceased with her; and she testified that her husband informed her that deceased said he and his wife were coming to Waco, and that her husband bought her a pistol. It is contended in all of said bills raising these questions that no such testimony had been brought out by the appellant in chief, and that it was not in response to any evidence elicited by appellant from said witness, and was permitting the state to have the appellant's wife. testify as a witness against him involving privileged communications between them. We are of the opinion that the testimony complained of, and similar testimony which involved such transactions and communications, were privileged communications and transactions between appellant and his wife, and that the learned judge was in error in admitting same. Art. 714, 1925 C. C. P. (Arts. 794-795 of the

old code) ; Willingham v. State, 252 S. W. 530. In Branch's Ann. P. C., under Sec. 152, p. 187, it is stated:

"The state is not entitled on cross-examination of the wife of the defendant to go into new matter and thereby make the wife of the defendant a witness for the state against her husband," citing numerous authorities in support of this contention.

In many bills of exception complaint is made to the action of the court in ruling upon the testimony of the appellant's wife. The court in his qualifications thereto states that said testimony was admitted solely as going to the credibility of said witness. The appellant contends that said statements of the court to all of said testimony when objected to was a charge orally given by the court to the jury, and was upon the weight of the testimony. We hardly deem it necessary to comment on these issues at this time, from the disposition we have made of this case, but it might not be amiss to say that said bills fail to show affirmatively whether or not the qualifications made thereon by the court were in writing or oral, and in the absence of such showing we would have to presume that they were in writing. Furthermore, it might be proper to state that in passing upon the testimony, the trial court should be exceedingly cautious about his remarks relative thereto, for the reason that has been often stated by this court in many decisions, that the jury is prone to scrutinize what the trial court says very closely in order to see what he thinks about the testimony admitted.

In bill 6 complaint is made to the action of the court in stating in the presence of the jury, in passing upon the testimony of appellant's wife, that same was admitted for the purpose of showing relations between the parties, meaning deceased and appellant's wife. We think this statement was on the weight of the testimony.

Complaint is also urged to the charge of the court and that portion of same charging the jury on manslaughter, wherein the court charges the jury that the provocation must arise at the time of the commission of the offense and the passion is not the result of a former provocation, and in another portion of said charge instructed the jury what is meant by "adequate cause," as follows:

"(d) By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, sudden resentment or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection, and any conditions or circumstances which are capable of creating and do create sud-

den passion, such as anger, rage, sudden resentment or terror rendering the mind incapable of cool reflection is deemed adequate cause, and you are instructed that when there are more causes than one reasonably calculated to arouse passion, it is for you to determine whether such causes combined, or whether any one of them, might have been sufficient to do so."

The court also charged the jury that in determining the adequacy of the provocation they could consider all the facts and circumstances in evidence in the case in determining the condition of the defendant's mind and adequacy of the cause, if any. In another section of the charge the court instructed the jury that insulting words and conduct of the person killed towards a female relative of the deceased is deemed adequate cause. Appellant contends that the charge is erroneous in that it limits the provocation to the time of the commission of the offense and that it is confusing to the minds of the jury, and that the court should have charged the jury as a matter of law that insulting words and conduct of the deceased towards a female relative were adequate cause, and should not have limited the provocation to the time of the offense. We think these complaints are well founded and that the charge of the court is susceptible of the criticism urged thereto. The facts, as we understand them, are that the appellant and the deceased were close friends, and nothing had transpired between them until after the wife had informed appellant of the improper conduct of the deceased towards her. We think the authorities cited amply sustain the contention made by appellant's counsel in this respect. Squyres v. State, 242 S. W. 1024; Dixon v. State, 271 S. W. 897; Bayes v. State, 99 S. W. 561.

Complaint is also urged to the court's charge and that portion of same wherein the learned judge charged the jury that if the defendant had been informed of said insulting words or conduct of the deceased towards his wife and believed same, and acted upon said belief and under such passion, and "killed the deceased upon the first meeting * * * after being informed, to find him guilty of manslaughter."

The undisputed testimony shows that when appellant's wife first told him about the improper conduct of the deceased she only told him about the deceased having kissed her and having attempted to make love to her, and that after receiving such information he met the deceased, but at the time he met deceased his wife had not informed him that the deceased had overpowered her and with force and without her consent had carnal

knowledge of her, and that this information relative to said force and carnal knowledge was imparted to him by his wife after he had seen the deceased as above stated, and that he had not seen deceased any more until the day of the homicide. The court's charge did not properly apply the law to the facts of this case, and from the charge given, the jury was likely to construe the charge to mean that the defendant would not be entitled to invoke the law of manslaughter if he did not kill the deceased on the first meeting, although at said time he did not know, nor had he been informed, that the deceased had by force actually obtained carnal knowledge of his wife. The charge should have been so framed as to apply the law to the last provocation, as well as to the first. Rogers v. State, 149 S. W. 127, 67 Tex. Crim. Rep. 467, and authorities therein cited.

By proper bill of exception complaint is made to the refusal of the court to permit appellant to show that his wife's general reputation for truth and veracity was good. The record discloses a very rigid cross-examination of her by the state, and after she had testified for appellant that the deceased by force had carnal knowledge of her against her consent, and denied on cross-examination by the state that deceased got in bed with her on a certain night, and denied any friendly relations or familiarity with deceased after said intercourse, the state then introduced deceased's wife, who testified that she saw deceased get in bed with appellant's wife, and that the latter's baby called him "daddy" or "papa," and that the next morning she bade him good-by, and also testified to other matters of an impeaching nature. Under these circumstances, we are of the opinion that the testimony should have been admitted. Graham v. State, 55 Tex. Crim. Rep. 104; Littlejohn v. State, 273 S. W. 864.

There are other errors complained of, but we do not deem it necessary, from the disposition we have made of this case, to consider them at this time.

For the errors above mentioned we are of the opinion that the judgment of the trial court should be reversed and remanded, and it is accordingly so ordered.

*Reversed and remanded.*

The foregoing opinion by the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.