## FRANK CASTRO v. THE STATE.

### No. 1698. Decided April 17, 1912.

**1.—Murder—Self-Defense—Charge of Court—Defendant's Standpoint.**

Where, upon trial of murder, the court, in his charge on self-defense, instructed the jury to view the transaction from what they believed from the evidence was the standpoint of the defendant at the time, etc., the same was reversible error. Following Simmons v. State, 55 Texas Crim. Rep., 441.

**2.—Same—Charge of Court—Burden of Proof.**

Where, upon trial of murder, the court's charge shifted the burden of proof and required the jury to believe the defensive theory before they could acquit, and omitted the reasonable doubt, the same was reversible error. Following Maloney v. State, 57 Texas Crim. Rep., 435, and other cases.

**3.—Same—Charge of Court—Self-Defense—Force.**

Where, upon trial of murder, the court's charge limited the degree of force, which the law authorizes a party to use in repelling an attack, to the circumstances as they appear from the standpoint of the jury, and led the jury to believe that defendant used more force than necessary, the same was reversible error. Following Carson v. State, 57 Texas. Crim. Rep., 394, and other cases.

**4.—Same—Charge of Court—Self-Defense—Threats.**

Where, upon trial of murder, the evidence raised the issues of self-defense and threats, and the court failed to charge self-defense from both standpoints, but complicated the charge on self-defense with threats, the same was reversible error.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. Clay S. Briggs.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Marsene Johnson* and *Elmo Johnson* and *Roy Johnson,* for appellant.—Whenever self-defense is an issue in the case, the defendant is entitled to a separate, distinct and affirmative charge on that issue, apart from and untrammelled by a charge on self-defense in connection with threats. Swain's case, 48 Texas Crim. Rep., 98; Fuller's

case, 95 S. W. Rep., 1039; McDowell's case, 55 Texas Crim. Rep., 596; Lundy's case, 59 Texas Crim. Rep., 131, 127 S. W. Rep., 1032.

This charge shifts the burden of proof on the defendant and is erroneous because, if the jury have a reasonable doubt that the shooting and killing was accidental, they must then find the defendant guilty instead of acquitting him. Moody's case, 52 Texas Crim. Rep., at page 232; Harris' case, 55 Texas Crim. Rep., at page 469; Maloney's case, 57 Texas Crim. Rep., at page 435. .

On other questions: Cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of court's charge on self-defense and threats and reasonable doubt, etc.: Egleston v. State, 59 Texas Crim. Rep., 542; Edwards v. State, 58 Texas Crim. Rep., 242.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of manslaughter. His punishment was assessed at five years confinement in the penitentiary, the maximum for the offense of which he was convicted.

There are quite a number of reasons suggested why the case should be reversed, principally on the charge of self-defense and threats. From the evidence we gather that this trouble came up suddenly between the deceased Trevino and appellant over some financial matters and the repairing of a wagon. They seemed to have been in a good humor almost to the moment of the difficulty. The evidence upon which self-defense is predicated was given by appellant and his wife. He testified that he was acquainted with deceased, and had been for six months; had business relations with him. He also speaks of the business matter between them in which he was repairing a wagon for appellant. The details of that matter are unnecessary here to be related. During their conversation, however, with reference to the wagon, they became a little excited, appellant claiming that deceased was claiming too much money off of him and more than the wagon was worth, and this brought out some exciting conversation. They had been in a very friendly humor it seems up to this time. There were four parties present, and they all had some beer in appellant's house in which the killing occurred, where deceased had gone in company with two other parties. The conversation grew rather warm with reference to the wagon and financial matter, and deceased threatened, to use the language of the witness, to fix appellant. Appellant asked him to leave. Appellant testified then as follows: "When I saw that he was not leaving, I tried to get away, move away about one or two steps. I heard that he said: 'You are a —— mother,' if you do not give me fifteen dollars. He grabbed me by the back of the neck; at the time I could not run away, because I had the counter in front of me and he grabbed me by the neck, and slapped me right here (back of the head), he gave me a blow. He pulled me back-

wards; at the time that I had the hands in the drawer, where I had the money of my sales, where I had one revolver. The drawer opened by itself when I was grabbing the drawer, and he pulled me and I pulled the drawer; with one hand grabbed the pistol. He pulled me backwards. We both went down together and turned me over one part to the other of the room. He knocked me down at the time that I wanted to take him from top of me. What I had in the hand was the pistol, and I tried to hit him with the point of it as if it was a knife, which was the defense which I had. At the time that I gave him a slap one of the bullets exploded; I became nervous; another bullet went off, I dropped the pistol to the floor crying, without knowing what had happened. I went out into the street and I met a man. I asked him what was that had been brought to me to my house, and he answered that he 'knew what was going to happen.' I went to call a policeman, and brought him to my house and showed him what had happened and that was all. I went to the policeman's house two times, and the last time I brought him to my house. Trevino, deceased, was the larger man of the two of us. I had made no effort to get to that drawer to get the pistol before the man struck me. At the time I got the pistol out of the drawer, Trevino, deceased, was holding me by the neck. All what I tried was to defend myself; I did not intend to make any harm on him, and did not intend to harm him in any way."

Being cross-examined, he said: "When I was with Trevino I did not intend to shoot him. I did not intent to even shoot at him; the bullet exploded. Trevino was on top of me when the pistol went off. As to how Trevino was shot in the back of the head, he had his head right here (indicating to the chest) and I hit him with the pistol somewhere in the head. Trevino's head was on my chest. My money drawer is under the counter in the store. The fight took place in the back room. As to when Trail told me about that trouble, it was after leaving my revolver, I went out and met him at the door. That was after the man had been shot. Trail never told me anything before the shooting."

Mrs. Castro, wife of appellant, testified that she saw both of the parties just before the shooting. She was standing at the west door in the hall, next to the kitchen, when she saw deceased strike her husband. Her husband tried to get away from him, and deceased grabbed him by the neck and hit him again. Her husband tried to get the pistol and did get it; they both fell down on the floor together. Her husband had the pistol in his right hand and was trying to defend himself, and as he was trying to do that, hitting Trevino, the pistol went off. Her husband was hitting Trevino with the pistol when it went off.

1. The court charged upon self-defense, among other things, as follows: "In determining whether the defendant acted in what reasonably appeared to him to be his necessary self-defense it is the duty

of the jury to look at the transaction from what you believe from the evidence was the standpoint of the defendant at the time and consider the same in the light of the facts and circumstances as you believe they appeared to the defendant at the time and not from any other standpoint."

This charge in almost the identical language was condemned in Simmons v. State, 55 Texas Crim. Rep., 441, in an opinion by Judge Ramsey. It is unnecessary here to review that question inasmuch as Judge Ramsey treated the subject sufficiently and held it error in the Simmons case.

2. Another error is assigned on the following charge given by the court: "If from the evidence you believe the defendant killed the said Nicolo Trevino, but further believe that at the time of so doing the deceased had made or was in the act of making an attack on him, which from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, and previous threats or statements of the deceased, if any, or threats or statements of deceased at the time, if any he made, caused him to have a reasonable expectation or fear of death or serious bodily injury and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him."

Objection is urged to this charge, first, because it shifts the burden of proof and places it on defendant; second, that the charge is erroneous in that it requires the jury to find or believe the defensive theory before they can acquit, and, third, because reasonable doubt is not charged in connection with this paragraph, and that by its omission it places the burden of proof on the defendant. We are of opinion that this criticism is correct. Without discussing it we refer to Maloney v. State, 57 Texas Crim. Rep., 435; Harris v. State, 55 Texas Crim. Rep., 469; Moody v. State, 52 Texas Crim. Rep., 232; Henderson v. State, 51 Texas Crim. Rep., 193; Stewart v. State, 51 Texas Crim. Rep., 223; Rutherford v. State, 48 Texas Crim. Rep., 431; Bird v. State, 49 Texas Crim. Rep., 96; Vann v. State, 45 Texas Crim. Rep., 434; Bennett v. State, 30 Texas Crim. Rep., 341; Johnson v. State, 30 Texas Crim. Rep., 419; Johnson v. State, 29 Texas Crim. App., 150; Moore v. State, 28 Texas Crim. App., 377; Crook v. State, 27 Texas Crim. App., 242; Shamburger v. State, 24 Texas Crim. App., 433.

3. The following portion of the charge is also criticised: "Every person is permitted by law to defend himself against any unlawful attack reasonably threatening injury to his person and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary." It is urged that this charge is erroneous in that it limits the degree of force which the law authorizes a party to use in repelling an attack to the circumstances as they appear from the standpoint of the jury

and not from the standpoint of the defendant; and again, because it was calculated to lead the jury to believe that in the opinion of the court, the defendant had resorted to and used more force than was necessary to defendant himself against the deceased, and also because it tended to impress the jury with the belief that in the opinion of the court defendant had used more force than was necessary and had slain the deceased when all reasonable appearances of danger had passed; and lastly, that the charge was a limitation· upon the right of self-defense unwarranted by the facts. We are of opinion that these contentions are correct. Carson v. State, 57 Texas Crim. Rep., at page 396; Huddleston v. State, 54 Texas Crim. Rep., at page 95, and cases therein collated.

4. The charge is also criticised because there was no charge on self-defense otherwise than complicated with threats. We believe this contention is correct. The charge to the jury in regard to self-defense also embodies threats. Where the question of self-defense is in a case and threats are also relied upon, self-defense theory must be charged from both standpoints. The decisions on this question are quite numerous and harmonious, and it is unnecessary to cite them.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*