Luther Moore v. The State.

No. 5221.   Decided January 28, 1921.

Rehearing Denied March 9, 1921.

#### 1.—Murder—Evidence—Dying Declaration—Statement of Deceased.

Where, upon trial of murder, the defendant introduced in evidence a part of the dying declaration of the deceased, there was no error in permitting the State to introduce from said dying declarations the statement of the deceased that he never had any weapon of any kind; the case having been tried upon the theory that the issue of self-defense upon apparent danger was involved, and the State's theory was that the deceased made no demonstration, and that there was no act from which the defendant could reasonably draw the inference that he was in danger of attack. Following Williams v. State, 30 Texas Crim. App. 444, and other cases.

#### 2.—Same—Evidence—Declarations of Defendant—Res Gestae.

Where, the bill of exceptions did not overcome the presumption in favor of the correctness of the court's ruling that the declaration of defendant, that he killed the deceased because he had been talking about his sister, was not shown to have been *res gestae*, there was no reversible error.

#### 3.—Same—Murder—Manslaughter—Malice—Other Motive.

Where, appellant contended that under the facts, a conviction for a higher grade of offense than manslaughter could not be sustained, but there was evidence besides that of insulting language to defendant's sister, that defendant was incensed because the deceased had become the surety for a certain party, upon his bail bond, and that this may have been his motive, etc., there was no error in the court's submission of the issue of murder, for which offense the defendant was convicted.

#### 4.—Same—Manslaughter—Charge of Court—Burden of Proof.

Where appellant contended that the vice in the court's charge was that it was so framed as to convey to the jury the idea that the defendant was required to prove the fact relied on by him, to reduce the grade of the homicide from murder to manslaughter, and placed the burden of proof upon him beyond a reasonable doubt, but taking the charge of the court as a whole on murder, manslaughter, and self-defense, and that no requested charge presented manslaughter defensively to the court's charge on murder, there was no reversible error in the instant case, as the court was not applying the reasonable doubt to manslaughter as a lesser degree, but to manslaughter as a higher crime as against self-defense, or no crime at all.   Following Pitts v. State, 29 Texas Crim. App., 374.

#### 5.—Same—Charge of Court—Insulting Language Toward Female Relative.

Where the Court's charge on adequate cause did not convey to the jury the idea that the right of defendant, growing out of alleged insulting conduct towards or words relating to his sister, depended upon the existence of such conduct or words in fact, the complaint on this ground was untenable, and there was no reversible error.

**6.—Same—Right to Go Armed—Charge of Court—Perfect Self-Defense.**

The court having in the charge embodied no qualification of the right of perfect self-defense, there is no merit in the complaint of his refusal to instruct the jury on the law applicable to defendant's right to arm himself and seek the deceased for an explanation. Following Williford v. State, 38 Texas Crim. Rep., 393, and other cases.

**7.—Same—Rehearing—Manslaughter—Requested Charge.**

Where, appellant contended in his motion for rehearing that this court erred in holding that he asked no special charge on manslaughter, but it appeared from the record that this court did not intend to so hold, but did intend to say that no charge was asked representing manslaughter defensively, in connection with the charge of murder, there is no reversible error; besides, the requested charge on manslaughter is manifestly erroneous, as it omitted the essential ingredient of a passion such as rendered the mind incapable of cool reflection.

**8.—Same—Charge of Court—Right of Going Armed.**

The contention that said charge should have been given because same prevented appellant's right to arm himself and ask an explanation is not tenable because the record showed no evidence supporting such issue and that the parties met casually and not upon defendant's purpose to meet the deceased.

**9.—Same—Manslaughter—Charge of Court—Sufficiency of the Evidence.**

Where, appellant again insisted, in his motion for rehearing, that the court's charge on manslaughter was too restrictive, but this was not borne out by the record, there was no reversible error; and while the same may not have been aptly framed, it substantially presented the issues raised by the record and no harm to the defendant seems to have resulted from the charge to the court, and the evidence being sufficient to support the conviction of murder, these was no reversible error.

Appeal from the District Court of Erath. Tried below before the Honorable J. B. Keith.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*W. J. Oxford, J. A. Johnson,* and *A. E. Hampton,* for appellant.— On question of defendant's declaration after the homicide: Freeman v. State, 51 S. W. Rep., 230; Rainer v. State, 148 id., 735; Ward v. State, 159 id., 272.

On question of the court's charge on manslaughter: Jones v. State, 33 Texas Crim. Rep., 496; Messer v. State, 43 id., 97; Hudson v. State, 43 id., 425; Bays v. State, 50 id., 551; Gillespie v. State, 53 id., 168; Sweat v. State, 178 S. W. Rep., 554; Mitchell v. State, 179 id., 116.

On question of burden of proof on court's charge on manslaughter: Huddleston v. State, 112 S. W. Rep., 64.

88 Tex.—40.

On question of seeking explanation and right of going armed: Richardson v. State, 28 Texas Crim. App., 216; Washington v. State, 151 S. W. Rep., 819; Walker v. State, 156 S. W. Rep., 208.

*E. B. Hendricks,* Assistant Attorney General, and *E. A. Berry,* Assistant Attorney General, and *J. B. McIntyre,* and *Chandler & Chandler,* and *William Pannill,* District Attorney, for the State.—On question of defendant's declaration after homicide: Bradberry v. State, 22 Texas Crim. App., 278; Bronson v. State, 59 Texas Crim. Rep., 17; Potterfield v. State, 147 S. W. Rep., 916; Rainer v. State, 148 id., 735.

On question of declaration of deceased that he was unarmed: Gowell v. State, 44 Texas Crim. Rep., 328, and cases cited in opinion.

On question of requested charge on manslaughter: Walker v. State, 151 S. W. Rep., 822; Vinson v. State, 179 id., 574; and cases cited in opinion.

MORROW, Judge.—The appeal is from a conviction of murder, and punishment fixed at confinement in the penitentiary for a period of ten years.

The appellant shot and killed Charles Clendennin on the 25th day of August, 1917. Some time prior to the homicide, the residence of appellant's mother had been burglarized and some property taken therefrom belonging to Hallie Moore, appellant's sister. Audie Moore, appellant's nephew, was charged and indicted for the offense of burglary, and the deceased signed his bail bond. Audie Moore seems to have subsequently made some statements to the grand jury reflecting upon the character of Hallie Moore for virtue and chastity. The grand jury caused Hallie Moore to come before them, as we gather from the record, to determine whether in making the statements mentioned Audie Moore had been guilty of perjury. Appellant and his brother accompanied their sister Hallie to the county seat, and in conversation with the district attorney and members of the grand jury protested against the interrogation of their sister upon the subject; and in the course of their conversations with the persons named and the sheriff, appellant connected the name of the deceased with the transaction. After returning to their home, they made inquiries of their sister touching the matter, and she denied any misconduct on her part, and said that while she was an inmate of the home of the deceased, about a month before the tragedy, he had made indecent proposals to her. Two or three days subsequent to this conversation the tragedy occurred. At the time it took place the deceased was sitting upon the counter in a store in the village. The appellant accused him, and after a few words were exchanged the deceased was shot and fatally wounded.

The evidence is somewhat in conflict concerning the conversation that took place, though it does appear without dispute that immediately before the shooting the appellant asked the deceased if he had not been

making some talk, or taking some part in that matter that Audie Moore was getting up about Hallie Moore, stating that if he had done so he was a God damned liar. The State witnesses testified that deceased replied that he had not, or at least they so understood him; and appellant then said: "Well, if you have made any talk publicly or privately about Hallie, you are a God damned son-of-a-bitch," and immediately fired.

The appellant introduced in evidence a part of the dying declaration of the deceased, as follows:

"In the first place he has been on friendly terms with me. He walked in to Bud Bynum's Gro. Store. I was reading a sketch in Ft. Worth Star-Telegram about Gov. Ferguson and we was talking about Ferguson having a hard deal. He walked in at that time. He asked what we were discussing. A whole crowd talked for several minutes. He suddenly stopped talking and laughing and he looked and gazed at me. He asked if I knew about Audy making talk about Hally Moore. I told him I had a little sketch of it. He says we been told that you were instrumental in talk going on. He wanted to know if I hadn't said something about Hally. I told him I hadn't made any public statement to anybody regarding her. He said if you have made any remark about her either publicly or privately you are a G. D. L. M. F. S. of Bitch. I started off of counter and he begun shooting. He shot twice and hit me; and I said, he has killed me, and jumped over behind counter. I went out door and he went towards home. I intimated to someone that gen. opinion was that girl wasn't acting just right."

The State introduced from the dying declaration the statement: "I never had any weapon of any kind." Exception was reserved to this upon several grounds, which we think are not tenable. The case was tried upon the theory that the issue of self-defense upon apparent danger was involved. The State's theory was that the deceased made no demonstration, and that there was no act from which the appellant could reasonably draw the inference that he was in danger of attack. Under these circumstances, it was competent for the State to show that the deceased was not armed, in support of its theory that he made no demonstration. Williams v. State, 30 Texas Crim. App., 444; Dougherty v. State, 59 Texas Crim. Rep., 469; Branch's Annotated Penal Code, sec. 1931.

There is complaint made of the refusal of the court to permit the appellant to prove by his wife that on reaching his home he stated that he had shot Charley Clendenning; that "Charley had been talking about Hallie." The court, in qualifying the bill, states that this "was not shown to be *res gestae,* neither the time elapsing after the shooting, nor the whereabouts of the defendant having been fully shown." It appears from the bill that the appellant lived at a point variously estimated at 150 to 300 yards from the scene of the homicide, and that he was seen to start in the direction of his home, and that he reached his home. There is a failure to show whether he went directly to his

home or not, and what intervened between the homicide and his reaching home. We are unable to conclude that the facts as recited in the bill overcame the presumption in favor of the correctness of the court's ruling.

We are unable to accept the view advanced by appellant that under the facts a conviction for a higher grade of offense than manslaughter cannot be sustained. There is much evidence from which the jury might have concluded that the cause of the killing was the information received by the appellant touching the language and conduct of the deceased towards the appellant's sister. There is evidence, however, before the appellant was informed that the deceased had made any improper proposals to Hallie Moore, that the appellant expressed ill-will towards the deceased, which, under the circumstances, may have been properly attributed by the jury to the fact that appellant was incensed because the deceased had become the surety of Audie Moore upon the bail bond. The homicide did not take place for several days after appellant had received the information given him by his sister, and his conduct during the intervening time, even up to a short time before the homicide, as detailed by some of the witnesses, may have impressed the jury with the view that his mind was not rendered incapable of cool reflection by the information touching the insulting conduct. Moreover, there was a sharp issue of fact upon which the jury may have found against the appellant, as to whether the homicide took place at the first meeting after knowledge of the insulting conduct. It is true that in the dying declaration, the deceased said that after appellant referred to the conduct of Audie Moore toward Hallie Moore, he, the deceased, said that he had made no public statement to anybody regarding it. The dying statement was made when the deceased was in a very weak condition, and was under the influence of narcotics, according to some of the evidence. The eyewitness testified. Some of them said that the deceased's reply to appellant was that he had had no connection with the matter. Under the facts, we do not feel warranted in holding, as a matter of law, that the evidence would not support a conviction of murder.

The evidence raised the issue of murder, manslaughter, and self-defense, and these the court submitted to the jury. Exceptions to the charge were reserved. The chief alleged vice in the charge is that it was so framed as to convey to the jury the idea that the appellant was required to prove the facts relied on by him to reduce the grade of the homicide from murder to manslaughter. The particular phase of the charge against which this criticism is urged is quoted from the charge on manslaughter as follows:

"And if you further believe from the evidence, beyond a reasonable doubt, that at the time the defendant shot the deceased he was laboring under such a degree of anger, rage, resentment, or terror, as to render his mind incapable of cool reflection, produced by the defendant having been informed that deceased had previously made improper and in-

decent proposals to his sister, and that such killing took place upon the first meeting of deceased by the defendant, after he had learned of such insulting conduct or words towards his sister, or if you further believe from the evidence, beyond a reasonable doubt, that at the time of the homicide in question the deceased admitted in the presence of or to the defendant that he, the deceased, had made statements derogatory to the character of the defendant's sister and on account of such admissions, if any were made, the mind of the defendant was then incapable of cool reflection and in that condition of mind he shot the deceased voluntarily and without justification, then in either event you will find the defendant guilty of manslaughter."

When the issues of self-defense, manslaughter, and murder, are raised by the evidence, it is often difficult to so frame the charge to the jury that it will not trench upon the rule touching the burden of proof, and at the same time safeguard the rights of the accused. This difficulty grows out of the fact that the lower grades of homicide are included in an indictment for murder, and these lower grades, in a case involving the issues mentioned, occupy both an offensive and a defensive relation to the case. The jury is called upon to determine whether the homicide was lawful or unlawful. The burden is upon the State to prove beyond a reasonable doubt the facts which show it to be unlawful and the facts which bring it within the higher rather than the lower grade of offense included in the indictment. To bring an unlawful homicide within the grade of manslaughter as against that of murder the burden is not upon the accused to prove the mitigating circumstances, but he is entitled to have the offense mitigated to the grade of manslaughter if there is evidence which produces in the minds of the jury a reasonable doubt as to which of the grades, the higher or lower, he should be convicted.

The usual manner pursued is to embrace in the charge a qualifying instruction to the effect that if the jury believe beyond a reasonable doubt that the accused is guilty of some grade of culpable homicide, but have a reasonable doubt as to whether it is murder or some lower grade of offense, then the benefit of the doubt must be given to the accused, and no conviction can be had of the higher grade. Such qualifying instruction has generally been held, in the absence of request for more specific instruction, sufficient to relieve the charge of substantial objection when considered as a whole. Pitts v. State, 29 Texas Crim. App., 364, 16 S. W. Rep., 189; Spangler v. State, 42 Texas Crim. Rep., 245; Oldham v. State, 63 Texas Crim. Rep., 527, 142 S. W. Rep., 17; Best v. State, 58 Texas Crim. Rep., 331; Hendricks v. State, 69 Texas Crim. Rep., 205; LaCrone v. State, 84 Texas Crim. Rep., 609, 209 S. W. Rep., 405. The refusal of the court to respond to such a request would probably be erroneous. Huddleston v. State, 54 Texas Crim. Rep., 93; Melton v. State, 47 Texas Crim. Rep., 451; Terrell v. State, 53 Texas Crim. Rep., 605; Stuart v. State, 57 Texas Crim. Rep., 592; Castro v. State, 66 Texas Crim. Rep., 285; Mason

v. State, 72 Texas Crim. Rep., 501.     He would not, however, be justified in departing from the approved practice in framing his charge, unless fortified with a request or an equivalent exception.   Otherwise. in the event of the conviction of manslaughter, the accused would have a just complaint in his claim that but for the shifting of the burden of proof his theory of justifiable homicide might have been accepted by the jury.

The language used in the exception in the instant case we quote:

"Because said charge is not the law, is prejudicial to the rights of the defendant, is restrictive against the defendant, places undue and unwarranted burden upon the defendant, and omits to submit the material issues to the jury."

No special charge upon this subject was requested.   In this state of the record, we believe the point presented does not justify or authorize us to reverse the case.   A leading case upon the subject is Pitts v. State, 29 Texas Crim. App., 374, from which we take the following quotation:

"But it is insisted that the court not only committed a grave, but fundamental, error in the manner in which the law of manslaughter was submitted upon that issue as raised by the evidence.   The portion of the charge complained of is as follows, viz.: 'If the defendant had been informed that said Stern had used insulting language about his, defendant's wife, and when defendant. heard of said language, the same created in the mind of defendant such passion as to render his mind incapable of cool reflection, and, acting under the impulse of said passion, if any, he with a gun shot and killed the said Stern the first time he met him after he had been informed that Stern had used insulting language about his, defendant's wife, then you are instructed he would be guilty of manslaughter.   And if you believe from the evidence beyond a reasonable doubt that the defendant did kill said Stern in the manner and under the circumstances as before explained in this paragraph, then you will find the defendant guilty of manslaughter, and assess his punishment,' etc.   To this paragraph of the charge the defendant, by his counsel, excepted before the jury retired, because it required the jury to believe beyond a reasonable doubt all the facts necessary to reduce the homicide to manslaughter before they could reduce the grade of his offense.   In support of this position we are cited to Rockhold's Case, 16 Texas App., 577, in which this court held that it was not necessary that the jury should believe beyond a reasonable doubt any fact essential to the establishment of a defense or a lower grade of crime.   'On the contrary,' it was said, 'if they have reasonable doubt of the existence of the facts essential to establish the higher grade of offense, the defendant is entitled to the benefit of such doubt.   The jury should never be required to apply the reasonable doubt to the existence or non-existence of a defense before they should give the defendant the benefit of such defense.'   As thus announced, the rule of law is unquestionably correct.   But in our opinion it is not

applicable in this instance, taking the charge as a whole, and considering the paragraph quoted in connection with the contest. After having correctly applied the law of murder in both degrees to the facts, the court instructed the jury: 'If, under the evidence and the instructions given in this charge, you have a reasonable doubt of defendant's guilt, as to murder of the second degree, then you will acquit him of that offense, and will next consider whether, under the evidence and the law as given in this charge, he is guilty of manslaughter, or whether he was justified in taking the life of Dave Stern, if you find he did kill said Stern.' Immediately succeeding this is the language in the paragraph quoted which is so bitterly complained of. We think the complaint is unwarranted and untenable. The court has evidently disposed of the higher grades, and is now instructing as between manslaughter and self-defense. As between these two issues the jury must find manslaughter beyond a reasonable doubt. He is not applying the reasonable doubt to manslaughter as a lesser degree, but to manslaughter as a higher crime as against self-defense or no crime at all; and in such case the jury are properly told they must find manslaughter beyond a reasonable doubt to warrant a conviction of that crime."

In the instant case, the issues involved and the instruction given (including the qualifying clause) are in substance the same as those in the case from which the above quotation is made. The principle announced, and the rules of law applied in the opinion written by Presiding Judge White deciding that case, are controlling in this one.

We think the charge did not convey to the jury the idea that the right of appellant, growing out of alleged insulting conduct towards or words relating to his sister, depended upon the existence of such conduct or words in fact. In addition to the above quotation from the charge, the following was embodied in it:

"Insulting words or conduct of the person killed towards a female relation of the party guilty of the homicide, is in law deemed adequate cause, providing the killing took place immediately upon the happening of the insulting conduct or the uttering of the insulting words, or so soon thereafter as the party killing may meet with the party killed after having been informed of such insults."

"And in this connection the jury are at liberty to determine from all the facts and circumstances in this case whether or not the defendant was informed of the insulting words or conduct, if any, on the part of the deceased towards the defendant's sister, and whether such information was the real cause which provoked the killing."

The court having in the charge embodied no qualification of the right of perfect self-defense, there is no merit in the complaint of the refusal to instruct the jury on the law applicable to the appellant's right to arm himself and seek the deceased for an explanation. Williford v. State, 38 Texas Crim. Rep., 393; Smith v. State, 81 Texas Crim. Rep., 368, 195 S. W. Rep., 598.

We have examined but deem it unnecessary to comment on the other questions presented for review, suffice it to say, none of them in our judgment are well taken.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 9, 1921.

LATTIMORE, Judge.—In his motion for rehearing appellant practically concedes that the issue of self-defense was not supported by testimony. There is strong contention, however, that our opinion incorrectly decided the various phases of manslaughter. Appellant says that we erred in holding that he asked no special charge on manslaughter. We did not intend to so hold, but did intend to say that no charge was asked presenting manslaughter defensively in connection with the charge of murder. The special charge asked is as follows:

"Gentlemen of the jury, you are instructed that if the defendant had been informed from any source that the deceased had been guilty of insulting words or conduct toward his, defendant's sister, he had the right to arm himself and to approach the deceased for an explanation of said conduct and words, and if at the time, the defendant approached the deceased, he, the deceased, stated to the defendant, that he had not made any PUBLIC talk about the defendant's sister, and if the defendant construed said statement in connection with the manner in which it was made, as an affirmance of the fact that the deceased had made PRIVATE talks about the defendant's sister, and the defendant, out of passion arising from said statement of the deceased at the time in connection with any previous information that had been conveyed to the defendant, shot and killed the deceased, his offense should not be of a higher grade than manslaughter, and the fact that he was armed and that he accosted the deceased for an explanation would in no way preclude his right to have the offense reduced to the grade of manslaughter."

That this special charge is erroneous is manifest. It omits the essential ingredient of a passion such as rendered the mind incapable of cool reflection. Passion includes anger and rage. To tell the jury that if appellant in passion from any cause, shot and killed, he could be guilty of nothing more than manslaughter, would announce a doctrine which would eliminate murder from most homicide cases.

The contention that said charge should have been given because same presented appellant's right to arm himself and ask an explanation, seems to us erroneous for an additional reason to that advanced in our former opinion. The record seems to present no evidence supporting such issue. The parties to the tragedy seem to have lived not very far apart and it does not appear that appellant went to the field, home, or place of business of deceased on the occasion of the homicide; but that

he met him casually in a public storehouse and that on said occasion, after delivering a message to another party, appellant accosted deceased. Appellant did not testify and nothing in the testimony of any other witness suggests that appellant went to said place because he expected or purposed to meet deceased. We know of no rule or law in this State giving to one who says that another party has insulted a female relative the right to put a pistol in his pocket·and go promiscuously about public places or anywhere that his business may call him and then seek to justify the having on or about his person such weapon upon the hypothesis that he might meet the party who had insulted his relative, in some place.

Appellant again insists that the charge on manslaughter was too restrictive and that it excluded any idea of manslaughter predicated upon insult to a female relative as presented to appellant or discovered by him, from statements made by Sheriff Deason and county attorney Pannill. We have examined the testimony on this point and find that both of said men testified and denied having communicated to appellant any information to the effect that deceased made slanderous statements about his sister. Both said witnesses disclosed that appellant and his brother came together making inquiries about the fact that deceased had gone on the bond of one Audie Moore. Audie Moore was a relative of appellant and there seems no question but that he had been before the grand jury and had made damaging statements concerning appellant's sister.

We have again examined the charge of the court and while same may not have been as aptly framed as it might, still we think it substantially presented the issues made by the record and that no harm to appellant seems to have resulted from the terms of said charge. The evidence discloses almost without contradiction that the sister of appellant had gone away from her home on several occasions and that appellant and his brother had brought her back; also that Audie Moore, a relative of appellant had made derogatory statements concerning the girl and that someone had caused the arrest of Audie Moore on a charge of burglarizing a house and that deceased had gone on his bond. It seems uncontroverted that this fact angered appellant and his brother. The grand jury of Erath County was in session and Audie Moore was before said body and evidently had made damaging statements concerning Hallie Moore. Effort seemed in progress to have Audie Moore indicted for perjury on this occasion. The grand jury sent for Miss Hallie Moore to come before them, evidently for the purpose of laying predicate for an indictment against Audie Moore based upon her denial of the charges made by him. When Hallie Moore came to the courthouse where the grand jury was in session she was accompanied by appellant and his brother who then insisted that she not be carried before the grand jury but that the matter of further investigating the charges made by Audie Moore, be dropped. It was on this occasion that feeling by them against deceased was

manifest.   The eyewitnesses to the homicide, which occurred a few days after the visit of appellant and his brother and sister to the grand. jury, testified without exception, that appellant abused deceased and asked him questions relative to his connection with Audie Moore and what Audie had said, but deceased denied having anything to do with it whatever, and denied that he had made any statement about the young lady either in public or in private.   As disclosed by these witnesses, the homicide seemed to have been one of unquestioned premeditation.   The only foundation for a claim that anything was said by deceased at that time suggesting a reflection upon appellant's sister, was the statement contained in the dying declaration of deceased in which he said that he told appellant that he had made no public statement about the girl.   This statement was taken under peculiar circumstances.   The Justice of the Peace said he went down to the depot that night and there found deceased who was under the influence of drugs and very weak.   A strange man who was unknown to the Justice of the Peace wrote down what was introduced as the dying declaration of the deceased.   It was not signed by deceased and the man who wrote it down was not produced as a witness.   It was not shown that after said statement was completed it was read over to the deceased.   That portion of said statement in which deceased purports to say that he told appellant that he had made no public statement about the girl is entirely reconcilable with the testimony of the disinterested State witnesses who were present at the homicide and testified that when appellant walked up to deceased and accosted him that he asked him if he had taken any part in this Audie and Hallie affair and deceased said that he had not, and appellant then asked him if he had made any private talk about her and deceased replied that he had not, and appellant then asked him if he had made any public talk about her and deceased said that he had not, and appellant then called him a G—d D—m lying son of a B——h and shot him.

We are constrained to believe that appellant has had a fair trial and that no errors appear that would call for reversal of the case and the motion for rehearing is overruled.

*Overruled.*