O. G. HATHCOCK v. THE STATE.

No. 7926. Decided June 11, 1924.

1.—Murder—Charge of Court—Manslaughter.

Where, upon trial of murder, the court's charge on manslaughter in explanation of what was meant by the expression "under the immediate influence of sudden passion," told the jury it was not enough that the mind should be merely agitated by a passion arising from some other provocation "or a provocation given by some other person than the party killed" held, the last part of the charge should not have been given.

**2.—Same—Charge of Court—Manslaughter—Application to Facts.**

Where, upon trial of murder, the court's charge on manslaughter told the jury in general terms that an assault and battery by deceased upon defendant causing pain or bloodshed would in law be adequate cause; however, in applying the law to the facts he failed to apply the law clearly and affirmatively to the facts of the case, the same is reversible error. Following: Long v. State, 84 Texas Crim. Rep., 529, and other cases.

**3.—Same—Charge of Court—Instrument Used—Burden of Proof—Self-Defense.**

Where, upon trial of murder, the court's charge on the question of the instrument or means used shifted the burden of proof from the State to the defendant in applying a reasonable doubt, and also in his charge on self-defense omitted to give appellant the benefit of reasonable doubt, etc., the same is reversible error. Following: Stewart v. State, 51 Texas Crim. Rep., 223, and other cases.

Appeal from the District Court of Bell. Tried below before the Honorable Lewis H. Jones.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*J. B. Hubbard, DeWitt Bowmer,* and *W. W. Hair,* for appellant.— On question of adequate cause: Rogers v. State, 149 S. W. Rep., 127; Long v. State, 208 id., 922.

On question of burden of proof: Stewart v. State, 101 S. W. Rep., 800; Anderson v. State, 110 id., 54; Stuart v. State, 124 id., 656; Maloney v. State, 125 id., 36; Castle v. State, 209 id., 416; Castro v. State, 146 id., 553.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney for the State.

HAWKINS, JUDGE.—Conviction is for the murder of Robert Garner, with punishment assessed at confinement in the penitentiary for twenty-five years.

The killing occurred in Belton on November 25, 1922, on a Saturday afternoon when many people from surrounding trade territory were in the city. Deceased and appellant lived in the same community and had known each other for years. No ill feeling appears to have existed between them until a few months prior to the homicide. The State introduced many witnesses who were present in Belton at the time of the difficulty which resulted in Garner's death, but none of them saw the fight at its inception, nor knew what led to it. When their attention was attracted to the disturbance the fight was in progress, appellant using a knife, cutting at, and advancing on, deceased as he backed down the sidewalk. Some of the State's witnesses say deceased was fighting appellant and backing; others, that he appeared

only to be attempting to ward off the blows of appellant. It appears from the defensive evidence that some months before the difficulty a singing school had been taught in the community where appellant and deceased lived for which the teacher charged a dollar and a half per pupil. Deceased seems to have been connected with getting up the class in some way. Appellant started to the singing school, but after attending two or three times ceased to go, because he reached the conclusion that he could not learn to sing. He testified that the teacher tried to induce him to continue his attendance, with the statement that if he failed to derive any benefit from the school no charge would be made. We gather from the record that Garner had became responsible for the payment of tuition and had paid to the teacher the dollar and a half which would have been due from appellant, unless he was relieved from payment by his failure to attend and the statement of the teacher to him. Several weeks before the homicide deceased met appellant in the town of Belton and demanded payment of the dollar and a half which appellant refused on the ground that he did not owe for the singing lessons. Deceased resented the refusal on the part of appellant to pay and told him at that time that he would have to pay it. On the day of the homicide appellant was seeking one of the county commissioners to get an order for some lumber with which to repair a bridge on a road over which appellant was overseer. In the forenoon deceased approached appellant and again demanded payment of the money, telling appellant he had to pay it; appellant replied, "I understood you said you were going to whip me if I did not pay it," to which deceased responded that he did make such statement and meant it. At this juncture the conversation was interrupted by another party; appellant left, saying that he had to see the county commissioner, whereupon deceased asked him to come down to the wagon yard later. Appellant agreed to do this but never went, and testified that he had no intention of going, but promised to do so in order to avoid trouble at the time. In the afternoon while appellant and other parties were standing on the streets engaged in general conversation deceased approached the group. According to appellant's testimony, he moved to the opposite side of the crowd from deceased, but deceased pushed his way through the group of men, and again demanded to know if appellant intended to pay the money. Not only appellant but other witnesses for him testified that when appellant again declined to pay, deceased immediately struck him several blows about the face and head before appellant ever drew his knife. The defense witnesses do not differ materially from the witnesses for the State as to what occurred after appellant got his knife open and began to cut deceased. Appellant testified that the blows upon the head caused him much pain; that he did not get, or attempt to get, his knife until after he had been struck a number of times by deceased.

Charging upon manslaughter in explanation of what was meant by the expression ''under the immediate influence of sudden passion'' the court told the jury it was not enough that the mind should be merely agitated by a passion arising from some other provocation ''or a provocation given by some other person than the party killed.'' The last part of the charge was excepted to because there was no evidence that any party other than deceased was connected with the killing in any way, or that any other party had given any provocation to appellant. In Craft v. State, 57 Texas Crim. Rep., 257, 122 S. W., 547, it was held that such instruction should not be given in the absence of evidence raising an issue of provocation by some person other than deceased. We call attention to it in order that this part of the charge may be omitted if the facts should be the same upon another trial.

The most serious question arises from another criticism of the charge relative to manslaughter. After instructing the jury generally with reference to what is meant by the expression ''adequate cause'' the court told the jury in general terms that an assault and battery by deceased upon defendant causing pain or bloodshed, would in law be adequate cause. However, in applying the law to the facts the issue was submitted generally, telling the jury if appellant made an assault upon deceased with a deadly weapon ''in a sudden passion arising from an adequate cause, as the same has been hereinbefore explained, etc.'' they would find appellant guilty of manslaughter. Specific objection was directed to this clause of the charge calling attention to the fact that the jury should have been told clearly and affirmatively that if deceased struck appellant a blow which caused either pain or bloodshed and thereby aroused the passion required under the statute, and that appellant then cut deceased while not acting in his own self-defense they should find him guilty only of manslaughter. In Branch's Ann. P. C. in the latter part of Section 2019, at page 1137, the following proposition is stated and authorities cited in support thereof.

''If a condition or circumstance made adequate cause by statute is in evidence, the charge should not only inform the jury that the same is adequate cause, but should apply the law to the facts and instruct them, for example, that if the blow was struck and that it caused pain or bloodshed and that it aroused the defendant to such a degree of anger, rage, sudden resentment, or terror as rendered his mind incapable of cool reflection at the time of the homicide, that then he should not be found guilty of anything higher than manslaughter.''

Where in the development of a case facts appear which if believed show a statutory ''adequate cause,'' the court should not only specifically tell the jury that such facts do constitute adequate cause, but should go further and make a pertinent application of the law to those particular facts, and should not submit the matter in a general

way. If there are other facts in evidence which the jury might conclude also constituted adequate cause it would be proper to submit this matter also, leaving the jury to determine whether all of the facts taken together would be adequate cause. The failure of the court to amend his charge in response to the particular exception referred to is such error as will require a reversal of the judgment. We do not discuss the matter at length as it has been frequently considered by this court. See Craft v. State, (supra); Love v. State, 71 Texas Crim. Rep., 79, 158 S. W., 525; Smith v. State, 65 Texas Crim. Rep., 65, 148 S. W., 699; Rogers v. State, 67 Texas Crim. Rep., 467, 149 S. W., 127; Long v. State, 84 Texas Crim. Rep., 529, 208 S. W., 922.

The court instructed the jury that the instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending, and that if the instrument be one not likely to produce death it was not to be presumed that death was designed unless from the manner in which it was used such intention evidently appeared; also that where a homicide was committed under the influence of sudden passion by the use of means not calculated by produce death the person killing should not be deemed guilty of murder or manslaughter unless it appeared from the evidence beyond a reasonable doubt that there was an intention to kill; but that the party killing might be prosecuted for an aggravated assault and battery. Applying the law as thus stated the following charge was given:

"Now, if you believe from the evidence that the defendant, O. G. Hathcock, made an assault upon the deceased, Robert Garner, with a knife, but if you further believe from the evidence that the defendant in making said assault did not intend to kill the said Robert Garner, under the instructions herein given you, then you are charged that the defendant would not be guilty of murder or of manslaughter; and if you find from the evidence that said assault was made without any intent on the part of the defendant to kill the deceased, Robert Garner, then you will acquit him of murder and of manslaughter, and will then enquire as to whether or not in making said assault, he did so in the defense of himself under the instructions herein given you, and if you should believe from the evidence that the said assault was made in defense of himself, then you will acquit him altogether and say by your verdict 'not guilty;' but should you find from the evidence that said assault was made with no intention on the part of the defendant to kill the deceased, Robert Garner, and should further find beyond a reasonable doubt that the defendant, in making said assault did not do so in defense of himself, then and in that event, the defendant would be guilty of an aggravated assault, and you should find him guilty of aggravated assault, and assess his punishment at a fine of not less than twenty-five nor more

than one thousand dollars, or by imprisonment in the County jail not less than one month nor more than two years, or by both such fine and imprisonment."

The foregoing charge was assailed by specific exceptions: (a) Because in the first part of said charge from the beginning of the same to the first semi-colon the court shifted the burden of proof from the State to the defendant and required the jury to believe that defendant did not intend to kill deceased when the law is that if they entertained a reasonable doubt whether such was his intent he would not be guilty of murder or manslaughter; (b) that the same objection applied to that portion of the charge reading: "and if you find from the evidence that said assault was made without any intent on the part of defendant to kill deceased, Robert Garner," unless in connection therewith the court had included the clause, "or if you have a reasonable doubt thereof;" (c) that the same objection applied to that portion of the charge reading, "and if you should believe that such assault was made in defense of himself then you will acquit him." Exception was also taken to paragraph 12 of the charge wherein the court submitted self-defense because as written it required the jury to believe such defense was established, and omitted to give appellant the benefit of reasonable doubt upon such issue. The following authorities appear to support the criticism of the charges in the particulars complained of. Stewart v. State, 51 Texas Crim. Rep., 223, 101 S. W., 800; Henderson v. State, 51 Texas Crim. Rep., 193, 101 S. W., 245; Stuart v. State, 57 Texas Crim. Rep., 592, 124 S. W., 656; Maloney v. State, 57 Texas Crim. Rep., 435, 125 S. W., 36; Castle v. State, 84 Texas Crim. Rep., 593, 209 S. W., 416; Castro v. State, 66 Texas Crim. Rep., 282, 146 S. W., 553.

Through our able State's Attorney, error has been confessed in the portions of the charge to which the opinion relates.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*