J. L. SHANNON v. THE STATE.

No. 12597. Delivered June 12, 1930.
Rehearing granted June 27, 1930.
Reported in 30 S. W. (2d) 331.

250

The opinion states the case.

*Dennis Zimmermann,* of Tulia, for appellant.

*Meade F. Griffin,* Dist. Atty., of Plainview, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, two years in the penitentiary.

That appellant shot deceased with a shot gun, thereby causing his death, is undisputed. That appellant had charged deceased with theft, had said that his wife had been drunk, and had made other statements against him, seems also without dispute. That deceased had made many threats against appellant of which the latter had been informed, seems also uncontradicted. At the time of this killing appellant was at work upon a wagon. Deceased, accompanied by his wife in a car, drove up and stopped. Deceased asked appellant if he was working hard or hardly working. Further conversation between the two of a nature and character to indicate feeling, is in the record. According to the State witnesses appellant presently said that he had taken all he was going to; that he walked to his wagon and got a shot gun and raised it to shoot; at this time the wife of deceased got between them. Appellant then walked

toward the back of the car of deceased and shot deceased under the right shoulder blade. Witnesses said deceased was doing nothing when he was shot. He had no weapon. After the shooting appellant told a State witness that he had put deceased where he would not tell any more lies or steal any more. Appellant's own testimony is not very different from that of the State witnesses. We quote from same:

"When he come up he said he wanted to talk to me and he asked me if his wife looked like she was drunk and I told him 'No.' I had never told anybody his wife was drunk. Then he said I was a damn liar. I said, I told him I had taken all I was going to take and started for my gun and I got my gun and shot him. Then I got in the car and left.

"I shot him in the back; I had more than one shot in the gun. I didn't shoot him again because I didn't want to. He didn't come out with his pistol; he never did come out with it. There was no necessity for shooting him any more."

He also said:

"I told Mr. Ticer to get off my place, that I had stood all I was going to stand; I asked him twice to leave. He said he wouldn't get off my place until he got ready."

Again in another place he testified:

"I didn't tell him I was going to kill him. When I got the gun and picked it up I didn't tell him I was going to kill him. As to whether I shot him down without any warning, he said he wouldn't go until he got ready and I figured he had come to kill me, if I hadn't I wouldn't have shot him.

"After I got the gun and started to walk back towards the car and was raising it up to shoot him she got in the way. As to whether she was pleading with me not to shoot him, she didn't; she never opened her lip. I didn't walk behind Mr. Ticer then to shoot him; I had to step behind her until she fell out of the car and then I shot him. I shot him right under the shoulder blade."

It is undisputed that deceased was in his shirt sleeves at the time he was killed, and that he had on an ordinary pair of trousers. Appellant claimed in his cross-examination that deceased made some movement toward the waistband of his pants, and that he thought deceased was trying to get a weapon. He testified further that deceased was sitting on the front seat of his car at the time of the shooting, and that he, appellant, was "quartering" between the two seats about five steps from the car when he shot. We might ob-

serve that we have rarely seen a case in which the defense was given a wider range in the introduction of its testimony as reflecting upon the deceased, and this may account for the smallness of the penalty inflicted.

We find in the record but one bill of exception in which appears complaint of the fact that the verdict when brought in found appellant guilty of "homicide" which was changed by the trial judge in the presence of and with the consent of the jury by erasing the word "homicide" and writing in its place "murder as charged in the indictment." After the change was made, the verdict as changed was read and all the jury stated that such was their verdict. We think the complaint in the bill has no substance. Art. 696 C. C. P.; Southern v. State, 34 Texas Crim. Rep. 144; Fifer v. State, 64 Texas Crim. Rep. 203; Gould v. State, 66 Texas Crim. Rep. 421; Scott v. State, 97 Texas Crim. Rep. 105; Allison v. State, 98 Texas Crim. Rep. 56.

A number of exceptions were taken to the charge of the court, none of which are deemed to be well founded. Appellant insists that his third exception is good, which in substance sets up that the charge failed to charge separately on the right of self-defense and on the question of threats, and failed to apply the law of reasonable doubt separately as to each defense. We might observe that the proposition of reasonable doubt was adverted to in the charge of the court herein, not only in general terms as applicable to the whole case but in more than a dozen instances where appears specific application. We again refer to the fact that abundant threats were proved without contradiction, some of same being to take the life of appellant. The soundness of any claim of self-defense must rest upon something said or done by the deceased which, viewed from the standpoint of the accused, might form the basis for reasonable apprehension of death or the infliction of serious bodily injury by deceased,—and this is true whether such claim be founded on threats or otherwise. The court charged on self-defense generally in paragraph eleven of the charge, and also gave the following charge on self-defense based on threats:

"Now, bearing in mind the instructions hereinbefore and elsewhere given in this charge, if you find and believe from the evidence that the defendant, J. L. Shannon, killed the deceased, A. L. Ticer, and that before the homicide the deceased had made a threat or threats to kill the defendant, or to do the defendant serious bodily injury, which threats were made either to the defendant himself

personally, or to any other person or persons and that prior to the homicide the defendant had been informed thereof, or that he had been so informed and reasonably believed such information, whether in fact true or not; and, if you further find and believe from the evidence, that at the time of the homicide the deceased by some act or conduct on his part then done or demonstration made, or words spoken, if any, manifested an intention to execute such threat or threats, if any so made or purported to have been made, and that it then and there reasonably appeared to the defendant, viewed alone from his standpoint at the time, that such threat or purported threat, if any so made, or purported to have been made, were then and there about to be executed by the deceased, and that by reason thereof he, the defendant, was in immediate danger of losing his life or suffering serious bodily injury at the hands of the deceased, then and in such event he was not bound to retreat and could stand his ground and defend himself and in so doing use such force and means as then and there reasonably appeared to him to be necessary, and so continue until such necessity, if any, ceased; and, if acting under such circumstances, he killed the deceased, he would be justified therein under the law, and if you so find and believe from the evidence, or have a reasonable doubt thereof, you will acquit the defendant and return a verdict of not guilty herein." We have no doubt of the sufficiency of this to give to appellant the benefit of the application of the doctrine of reasonable doubt to his specific defense, as fully as the law demands, or as is stated in any opinion of this court upon a fair consideration of the facts, and do not think said charge open to the criticism that it left the jury to determine the right of self-defense viewed from the standpoint of the jury and not the standpoint of the accused. The entire charge can be looked to in every case in order to determine the validity of any complaint of any part of such charge. There were several special charges asked and refused, but we believe them all covered by the main charge, and that the record in this case is here without just complaint.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, Judge.—In our original opinion there is copied paragraph thirteen of the charge which was an instruction regarding self-defense based upon threats in connection with which the

jury was told that if they "believed" the killing occurred under the circumstances therein described, or had a "reasonable doubt thereof" to acquit. Paragraph eleven of the charge submitted the issue of self-defense independent of threats wherein the jury was required to *believe* that if it reasonably appeared to appellant, viewed from his standpoint, that deceased was making, or about to make, an attack from which appellant reasonably feared death or serious bodily injury, and killed under such circumstances, the jury should acquit, but in this connection the court omitted to tell the jury if they had a reasonable doubt whether the killing occurred under such circumstances they should acquit. This omission was called to the court's attention by paragraph three of appellant's written objections to the instructions; in addition to this two special charges were requested on the issue of self-defense in connection with each of which reasonable doubt was embraced.

In his motion for rehearing appellant insists that our original opinion, in not holding the omission referred to as erroneous, is out of harmony with Regittano's case, 96 Tex. Cr. R. 477, 257 S. W. 906. In the original opinion in that case it was recognized that there did exist a conflict in our own authorities upon the subject brought about by apparently conflicting opinions many years ago in Powell v. State, 28 Tex. Cr. App. 398, 13 S. W. 599, and Johnson v. State, 29 Tex. Cr. App. 150, 15 S. W. 647. In the Regittano case Presiding Judge Morrow reviewed many authorities and undertook to clearly state the views of this court upon the subject in the following language:

"It is believed, however, that where as in the instant case, the defensive theory is an affirmative one—that is, where the connection of the accused with the homicide is conceded and justified by affirmative testimony given by the accused—when the matter is properly presented in the trial court, there should be embodied in the charge submitting his defense the information to the jury that, if they believe the affirmative defensive facts or have a reasonable doubt of their truth, an acquittal should result."

In the present case it was conceded that appellant killed deceased; he attempted to justify the act by affirmative testimony that he did the killing in self-defense. Under the facts this case is brought squarely within the principle announced in the Regittano case, which has since been followed in Garcia v. State, 101 Tex. Cr. R. 423, 275 S. W. 1005; Hathcock v. State, 103 Tex. Cr. R. 518, 281 S. W.

859; Tucker v. State, 103 Tex. Cr. R. 599, 281 S. W. 869; Ford v. State, 105 Tex. Cr. R. 44, 285 S. W. 614; Thompson v. State, 105 Tex. Cr. R. 351, 288 S. W. 464. A charge in form as here criticized was condemned in Castro v. State, 66 Tex. Cr. R. 282, 146 S. W. 553, in which fourteen prior cases are cited as supporting the holding. There is nothing in Boaz v. State, 89 Tex. Cr. R. 515, 231 S. W. 790, out of harmony with the Regittano case. In neither of the cases was there specific written objection to the omission of "reasonable doubt" in connection with the submission of the affirmative defensive issue, in the absence of which objection it was held that under the statute (now Art. 666 C. C. P.) no reversal would follow.

In submitting an affirmative defensive issue much confusion could be avoided if it was always clearly kept in mind that under our law an accused has the presumption of innocence with him, and where he relies on an affirmative defensive fact to defeat a prosecution it is only necessary that the evidence raise in the mind of the jury a "reasonable doubt" as to the truth of the defensive fact which is inconsistent with guilt. This principle was recognized in Simpson v. State, 93 Tex. Cr. R. 303, 247 S. W. 548. There the defense to a prosecution for rape was a claim that the female who was over fifteen years of age was of previous unchaste character. In submitting the issue the court omitted to tell the jury to acquit if they had a reasonable doubt as to whether prosecutrix was a chaste female. Judge Lattimore, writing for the court, very clearly said:

"If said matter be made an issue, we do not believe any greater burden rests upon the accused in making out such defense, than to present testimony sufficient to raise in the minds of the jury a reasonable doubt as to the previous chaste character of such female," and further said, "* * * we also believe that the refusal of the court upon request to instruct the jury that they could not convict the appellant if they had a reasonable doubt from the evidence as to the previous chaste character of said female was error, and such error as calls for a reversal of this case."

After further deliberation over the matter we incline to the view that appellant is correct in his position that our original opinion in the particular discussed is not in accord with the Regittano case (supra) and the great weight of our own authorities. (See last paragraph on page 5, Branch's Ann. Tex. P. C. for authorities.)

Appellant further insists that the use by the court in the charge quoted in our original opinion of the expression "if you believe from the evidence that at the time of the homicide the deceased by some act or conduct on his part then done or demonstration made, or words spoken, if any, manifested an intention to execute such threat or threats," was erroneous as permitting the jury to determine whether deceased manifested an intention to execute the threats, whereas they should have been directed to determine whether from any acts or words coupled with the acts of deceased it reasonably appeared to appellant, viewed from his standpoint, that deceased was about to carry the threats into execution. (Dunne v. State, 98 Tex. Cr. R. 7, 263 S. W. 608, and authorities therein cited.) If the charge quoted could be construed as insisted upon by appellant it would be erroneous, but regarded in its entirety we think such construction doubtful. However, attention is called to the matter so that in the event of another trial the objectionable phraseology may be eliminated.

For the reasons first discussed, the motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*

MORROW, PRESIDING JUDGE.—In Art. 666, C. C. P., it is declared that an omission in the charge shall not work a reversal "unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial."

The effect of the statute is to vest the Court of Criminal Appeals with discretion which carries with it a grave responsibility and the duty in the exercise of the power to guard against its abuse. Manifestly, the language used to express the legislative intent is void of any specifically defined limitations upon the power conferred. Whether a fault in the charge is calculated to injure, that is, "likely to produce a certain effect, whether intended or not," is left to the decision of the members of the court as their judgment and conscience may guide them. Generally speaking, a fair trial signifies a legal trial, when conducted in substantial conformity with the law and prescribed procedure. The statute mentioned (Art. 666, C. C. P.), is founded upon the thought that there may be a fair trial though the procedure is not accurately followed. It has never been, and ought not to be, regarded as dispensing with the necessity

of a written instruction to the jury giving effect to the right of the accused to the presumption of innocence and reasonable doubt. In the present instance, the charge of the court ignores neither the presumption of innocence nor reasonable doubt but in presenting to the jury the issue of self-defense, the charge is framed in a manner which has heretofore been construed by this court as impinging the law of presumption of innocence and reasonable doubt and calculated to lead the jury to conclude that to prove that he acted in self-defense the burden was upon the accused. Considered in the light of the entire record, whether the fault in the charge is one which was calculated to injure the rights of the accused and thereby deprive him of a fair and impartial trial is a question upon which trained minds may differ, and in the present instance, apparently have differed. The accuracy of their conclusion is not susceptible of demonstration. In view of these conditions such doubt is entertained by the writer touching the probable effect of the error mentioned as renders him unwilling to cast the deciding vote against the accused. I therefore concur in the reversal.

### DISSENTING OPINION.

LATTIMORE, JUDGE.—This case is before us upon rehearing, and Judge Hawkins has written an opinion indicating that it should be reversed because of the failure of the court to apply the doctrine of reasonable doubt to the paragraph of the charge submitting the issue of self-defense apart from threats. I am unable to bring myself in accord with that view, and submit the following:

There has rarely come before this court a case showing from the State's standpoint a more deliberate assassination than this one. Appellant and deceased had been friends but had fallen out, and appellant had ordered deceased not to come on his place. Deceased had made threats against appellant who, he claimed, had talked about his wife, accusing her of having been drunk. On the occasion of this homicide appellant was at his home working on a wagon when deceased, in a Ford touring car with curtains, drove up and stopped, according to the testimony of appellant's own daughter (S. F. 68), thirty or forty steps from where appellant was at work. The wife of deceased was in the car with him. He asked appellant if he was working hard or hardly working. After a few remarks deceased asked appellant if his wife looked like she was drunk. Appellant said no, and deceased asked him if she looked any more like it than when appellant had seen her last before, and, according to

appellant's testimony, deceased then called him a damn liar. The State's testimony contradicted this, but that is aside. Appellant alone gave any testimony favorable to his contention of a killing upon self-defense, apart from some other testimony as to threats. On his direct examination he gave no such testimony, but swore as set out in our original opinion. He said that when deceased called him a damn liar, he told deceased he had taken all he was going to take,—went and got his gun, came back and shot deceased in the back. He said he asked deceased twice to leave, and the latter replied that he would not go until he got ready. However, on cross-examination appellant testified that when deceased called him a damn liar, he, deceased, started down like that,—indicating by running his hand down between his pants and shirt,—at which juncture appellant went to his wagon, got his shot gun, came back thirty or forty steps, according to his daughter, to the right side of the car of deceased, raised the gun, and when the wife of deceased threw herself in the way, appellant stepped further back, and while deceased was still sitting under the wheel unarmed and in his shirt sleeves, shot him in the back, killing him. Appellant testified he was about five steps from the car of deceased when he shot. He mentions no other movement of deceased save that before appellant got his gun deceased ran his hand inside his pants. All the witnesses affirm that deceased had no weapon, and that he was in his shirt sleeves, and all of said witnesses affirm he made no motion of any kind before he was shot.

Appellant would have the jury believe that he shot in self-defense upon his testimony only that deceased ran his hand in his pants at the time deceased called him a damn liar, *after which* appellant walked to his wagon, got his shot gun, came back, presented the shot gun,—Mrs. Ticer threw herself before the shot gun, and appellant walked back to get free from her interposition, his victim sitting there all this time doing nothing, and that he then shot him in the back. This much for the facts.

What of the law? This court has gone a long way in some cases in holding that what might be termed the affirmative defensive theory should have coupled with its presentation a separate announcement applying the doctrine of reasonable doubt. This proposition when considered in the appellate court should not be laid down as an invariable rule, but should be governed by the facts of the case and the charge as given. It is also true that in certain cases this court has said it is not enough to charge on self-defense, when an

issue, only in connection with self-defense based on threats. See cases cited in Branch's Ann. P. C., Sec. 2089. Examination of all these cases makes apparent the fallacy of saying that this rule should be given application in all cases. Each case cited plainly shows from its facts and the character of charge actually given, that injustice was done in the trial court by giving a charge on self-defense coupled with threats, and omitting to charge on self-defense apart from threats. Not so here. In most of those cases the testimony as to threats was weak or equivocal or practically nothing,—while testimony supporting self-defense otherwise, was strong and cogent; but in this case we have facts wholly different. To start with the court below charged on self-defense coupled with threats; also such self-defense apart from threats. Further, we have here a case in which threats were proved by several witnesses without question or dispute, and in which self-defense, if any, was dependent on what appellant alone swore he took to be a threatening gesture by deceased, viz.: running his hand down in his pants. If such testimony raised and supported the issue of self-defense,—then beyond doubt it with more force supported the theory of self-defense based on threats. Self-defense apart from threats was based alone upon appellant's testimony as to a threatening movement; self-defense based on threats rested alone upon his testimony as to this threatening movement backed up by undisputed testimony as to threats. In his charge quoted in our opinion the trial court most fully and favorably to appellant submitted in paragraph thirteen self-defense based on threats accompanied by some act or word indicating a present intention on the part of deceased to execute the threats, and said paragraph wound up by an application of the doctrine of reasonable doubt to such theory. Under the undisputed facts this would seem to be all appellant was entitled to. Under said facts it is perfectly clear that if there was no self-defense based on threats, then there was none at all in the case, and for us to reverse this case because the court in charging on self-defense apart from threats, after stating the law of that issue in paragraph eleven most favorably to appellant,—omitted to include in said paragraph the law of reasonable doubt as applied to this character of self-defense, would seem not only to ignore Art. 666, C. C. P. entirely, but would be a reversal upon a complaint of the charge wholly lacking in substantial merit or substantial possibility of injury. We are forbidden by statute to reverse cases for errors in the charge which are of no injury to the accused. Art. 666, supra. It seems utterly

impossible to conceive of injury here because of the failure to insert the charge on reasonable doubt in paragraph eleven submitting the defensive issue of self-defense, which was weakly supported and overwhelmingly combated; when said charge on reasonable doubt was given in the paragraph submitting the same defensive issue of self-defense as far as the threatening gesture was concerned, which latter issue was more strongly supported by the undisputed testimony as to threats. This seems especially true in view of the fact that the doctrine of reasonable doubt was in addition applied to the whole case and to many of the other separate paragraphs of the charge.

This is said without discussing the fact further that all other parts of the charge presenting the defense were most favorable to the appellant; and that it seems altogether improbable that the jury could have failed to give him the full benefit of every doubt supported by any testimony.

Self-defense based on threats becomes available only when the injured party at the time of the assault does some deed, or makes some gesture, or uses some expression which reasonably causes his assailant to think that he is about to execute such threats. Granting the proof of threats in this case, and considering only appellant's testimony, it shows beyond any serious question that after the deceased had made the threatening gesture attributed to him by appellant, the latter took sufficient time to walk from where he was back to his wagon, to there pick up his gun, to then walk back to where deceased was sitting in his car, and to then raise his gun, and when the wife of deceased interposed, to walk further back and shoot deceased in the back, he having made no further gesture. I am sorry, but I can not bring myself to believe that this case should be reversed for the failure of the court to couple reasonable doubt with the paragraph presenting self-defense apart from threats, and I respectfully dissent.